Elliot **HANDLER** et al.,
**Plaintiffs-Appellants,**

v.

**SECURITIES AND EXCHANGE
COMMISSION et al.,
Defendants-Appellees.**

No. 77-1820.

United States Court of Appeals,
Ninth Circuit.

Dec. 28, 1979.

Herbert J. Miller, Jr., Washington, D. C., for plaintiffs-appellants.

Paul Gonson, Washington, D. C., argued, for defendants-appellees; Vincent J. Marella, Asst. U. S. Atty., Los Angeles, Cal., on brief.

Before GOODWIN and TANG, Circuit Judges, and EAST,[*] District Judge.

TANG, Circuit Judge.

In this appeal, the plaintiffs, Elliot Handler, Ruth Handler, and Seymour Rosenberg, challenge the authority of the court in implementing a consent decree in which Mattel, Inc. agreed to appoint special counsel to investigate possible securities violation by Mattel and which required that the special counsel file with the court a report detailing his investigation. We find that the district court did not exceed its authority in allowing the appointment of the special counsel, and that the plaintiffs may not · challenge the manner of the special counsel's investigation because they failed to raise their objections in a timely manner. We, therefore, affirm the judgment of the

district court dismissing the plaintiffs' action for declaratory and injunctive relief.

During February 1973, Mattel released two inconsistent statements regarding its financial affairs. The SEC began a preliminary investigation of Mattel and in June 1973 met with Mattel officials to discuss the inconsistencies. Seven months later, the SEC began a formal investigation of Mattel. The SEC uncovered potential securities violations.

After negotiations, Mattel and the SEC agreed to settle the matter through a complaint and consent decree filed in the District of Columbia on August 5, 1974. *SEC v. Mattel, Inc.*, Civ. Action No. 74–2958. The complaint charged Mattel with violating the antifraud and periodic reporting requirements of the Securities Exchange Act by issuing false and misleading press releases and by filing false and misleading quarterly reports with the Commission during fiscal year 1973. Under the terms of the judgment and the order for permanent injunction and ancillary relief to which Mattel consented, Mattel's officers and employees were enjoined from further violations of the securities law. Mattel was further required to establish an "Audit Committee" and a "Litigation and Claims Committee", a majority of whose members were to have had no prior affiliation with Mattel. Mattel also agreed to appoint two new additional directors, approved by the SEC, who had no prior affiliation with the company. Elliot and Ruth Handler both · were members of Mattel's board of directors and personally voted with the board in approving this consent judgment. Rosenberg, who had served as a director of the company until August 1973, was aware shortly after their filing of the complaint and consent decree.

After the entry of the consent judgment, Mattel conducted an internal investigation of its affairs and uncovered additional potential securities violations, which the Mattel Board of Directors, including the Han-

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

dlers, voted voluntarily to report to the SEC. Mattel and the SEC agreed then to reopen the litigation and amend the initial judgment. On October 2, 1974, pursuant to an amended consent judgment approved by the Mattel directors, including the Handlers, the district court expanded the scope of its permanent injunction and ancillary relief. Relevant to this case was the provision for the appointment by Mattel of special counsel with the approval of the court and of the SEC. The special counsel was to be appointed by a majority of the additional, nonaffiliated directors. The special counsel's duties were to conduct a full investigation into the securities violations alleged in the SEC complaint; to initiate upon approval of the majority of additional directors, civil action against Mattel officials or any other persons, or to take any other action necessary for the protection of Mattel shareholders; to investigate any other matters that the special counsel felt appropriate; and to file a report based on his findings. The report was to be filed with both the court and the SEC. Special counsel was authorized to consult with the SEC or the court and apply to it for advice and direction. Special counsel was also authorized to appoint a special auditor to conduct an audit of Mattel's financial affairs and file a report based on the findings. Mattel's officers, directors, agents, and controlling persons were ordered to make available all relevant information reasonably requested. There was nothing in the amended judgment, however, to prevent the assertion of any applicable constitutional or legally recognizable privilege. To provide for judicial supervision of the judgment, the district court then transferred the case from the District of Columbia to the Central District of California.

Mattel thereafter appointed seven additional nonaffiliated directors. With the district court's approval, the directors appointed attorney Seth Hufstedler of Los Angeles as special counsel and the accounting firm of Price, Waterhouse & Co. as special auditor. All the plaintiffs were aware of these appointments. The special counsel and special auditor, in conjunction with Mattel and

the SEC, developed certain guidelines to implement their required investigations. These guidelines included investigating and reporting Mattel's corporate practices that violated securities laws, examining the relationship between Mattel's past and present management, and advising the independent members of Mattel's board of directors what steps should be taken to rectify wrongdoing.

The special counsel and special auditor then undertook a nine-month investigation of Mattel's corporate practices, which included reviewing corporate records and interviewing management. In conducting these interviews, the special counsel advised the witnesses of their right to counsel and right to refuse to answer questions, and assured the witnesses that their testimony was voluntary. When interviewed by the special counsel and special auditor, the plaintiffs were personally represented by their own counsel and were told in their respective interviews that each had the right to be represented by counsel and the right to refuse to answer any questions. Ruth Handler was told that any answer that she provided could be used against her.

Upon completion of the investigation, special counsel submitted his report to the SEC and to the court on November 3, 1975. The report was released to the public. The report was prefaced with the statement that its conclusions "should not be treated as factual findings of the kind that might be entered by a court after a trial on the merits." The report generally disclosed the wrongful practices it had uncovered in the course of investigation. Although the wrongdoers were not identified in the body of the report, the plaintiffs were identified at the beginning of the report as persons against whom the special counsel recommended that Mattel take legal action. The SEC made copies of the report and its investigative files available to the United States Attorney for possible criminal prosecution.

On January 7, 1977, the plaintiffs filed their present action. They alleged that the Second Amended Judgment violated Article

III of the Constitution, in that it authorized an unlawful delegation of governmental power by the SEC to a private person. They alleged that the judgment's approval of the special counsel's report violated their constitutional rights to due process. The plaintiffs sought a declaration that the portion of the amended judgment establishing the special counsel be declared invalid and to strike and expunge from the court's files the reports of the special counsel and special auditor and to prohibit the defendants from using the information obtained as a result of the reports against the plaintiffs. Because of the possibility that criminal indictments might soon be returned against the plaintiffs, the parties proceeded on an expedited briefing and discovery schedule. The parties stipulated to facts, and the district court heard the matter as a motion for summary judgment. It dismissed the complaint, holding that the plaintiffs had no standing to attack the judgment because they were no longer employed by Mattel; that it was within the jurisdiction of the court to require a special counsel to file reports with the court; that the interviews conducted by special counsel did not violate plaintiffs' constitutional rights; that the SEC did not abdicate its investigatory responsibilities to the special counsel; that the Handlers were estopped from complaining of the effects of the report because they approved the corporation's decision to enter the amended consent decree; and that their action to suppress evidence was premature since they had not been indicted and could move to suppress evidence if they were indicted. The plaintiffs appealed.

The plaintiffs raise a variety of arguments on appeal in support of reversal. They argue that under Article III, a federal court is prohibited from participating in the investigative and reporting functions contained in the amended judgment; that the amended judgment constitutes an unlawful delegation of the SEC's powers to a private party; and the powers exercised by the special counsel deprived them of due process.

I

■ The district court is inherently invested with broad equitable powers and has the authority to mold its decree to the necessities of the particular case. *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944). In order to give effect to remedial statutes, the equitable powers of the federal courts are particularly broad, and the courts may utilize flexible and novel approaches to implement Congressional intent. *See, e. g., Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). With respect to the enforcement of the federal securities laws, the federal courts have repeatedly employed numerous forms of ancillary relief, including the appointment of special counsel. *See International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974) (special counsel); *SEC v. United Financial Group, Inc.*, 474 F.2d 354, 358 (9th Cir. 1973) (receiver); *SEC v. Koenig*, 469 F.2d 198 (2d Cir. 1972) (receiver); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972) (trustee).

■ Despite plaintiffs' attempt to characterize the appointment of a special counsel as a violation of Article III, the district court's order providing that Mattel appoint special counsel was an appropriate exercise of the court's equitable powers. It should be emphasized that the district court did not impose special counsel upon Mattel. Instead, Mattel, pursuant to a consent judgment, agreed to the appointment of special counsel as a proper means for investigating its internal practices. Although the district court approved special counsel, it was Mattel who actually selected and appointed the special counsel. Thus, the appointment of special counsel was a self-initiated corporate investigation undertaken by Mattel to police its internal corporate practices which had been called into question. This kind of self-policing benefits the corporation by minimizing federal interference into its corporate affairs, and benefits the SEC by allowing it to employ its limited investigative resources elsewhere. We cannot, as

the plaintiffs would have us do, characterize Mattel's essentially private investigation as a usurpation by the judiciary of the executive branch's prosecutorial function merely because appointment of the special counsel was implemented by a court-supervised consent decree. The fact that the court retained jurisdiction of the case to insure that Mattel complied with the consent judgment does not constitute a violation of the doctrine of the separation of powers.

## II

■ Because we find that the appointment of special counsel was an appropriate exercise of the district court's equitable powers, it is unnecessary to inquire into the manner in which special counsel performed his appointed tasks. We find that the failure of the plaintiffs to seek equitable relief in a timely fashion requires us to affirm the dismissal of their suit.[1]

The Handlers were members of the Mattel board of directors that voted to enter the original consent judgment and the amended consent judgment. Rosenberg, although he was no longer a member of the board, became aware of the judgments soon after their entry. Once the decree was entered, they did not move to prevent the implementation of the decree or modify those portions of the decree that they found offensive. Instead of seeking a protective order or refusing to answer questions that they found incriminating, the plaintiffs raised no objection to the special counsel's interviews. Although the Handlers' attorney did request special counsel, the day before he filed the report, to seal the report

upon delivery, the plaintiffs never sought an order from the court to seal the report. More significant, however, was the failure of the plaintiffs to bring their present suit in a timely manner. The plaintiffs waited fourteen months after the report had been filed and disseminated to the public before bringing this action. By that time, even if the plaintiffs had been entitled to the relief they requested, the district court probably would have been unable to undo any harm to the plaintiffs that may have resulted from the publication and dissemination of the report.

The plaintiffs' inaction here was greater than that exhibited by the plaintiffs in *Hogan & Hartson v. Butowsky*, 77 Civ. 5661 (D.D.C.1977). In that case, as part of the protracted Vesco litigation, a special counsel was appointed pursuant to consent decree. Before the special counsel filed his report, the plaintiffs filed an application for an order enjoining the filing of the report. See *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974). In denying the stay there, the district court was greatly persuaded by the fact that the plaintiffs' delayed filing for a stay until just before the report was due.

In this case, the plaintiffs waited fourteen months *after* the report was filed before seeking extraordinary relief. Whether we label the legal theory as laches, waiver, or estoppel, we find the plaintiffs' inaction provides sufficient reason for the district court to have dismissed their suit. *See Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

The judgment of the district court is affirmed.

---

1. Thus, we need not decide whether the investigatory procedures employed by the special counsel violated the plaintiffs' constitutional rights. We recognize that, in some instances, a special counsel's investigation may potentially infringe on the constitutional rights of the persons being investigated unless safeguards are required. In any event, special counsel in this case was scrupulous in assuring that the rights of the plaintiffs and others under investigation were protected.

We also need not decide whether a special counsel's report violates notions of due process if it identifies persons of wrongdoing. *Compare Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), *with Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (due process rights vary depending on whether Commission exercises function akin to making an official adjudication of criminal culpability). Here, the special counsel's function was investigatory, not accusatory, and special counsel advised in his report that he was making no determination of any person's guilt or liability.