**GOLDEN STATE TRANSIT CORPORATION, a California corporation, doing business as Yellow Cab of Los Angeles, Plaintiff,**

**v.**

**The CITY OF LOS ANGELES, a municipal corporation, Defendant.**

**No. CV 81–1519–AAH(Gx).**

United States District Court, C.D. California.

April 23, 1987.

---

Crowell & Moring, Washington, D.C. by Zachary D. Fasman, and Luther Ziegler, and Paul, Hastings, Janofsky & Walker, Los Angeles, Cal. by Nicholas DeWitt, for plaintiff.

James K. Hahn, City Atty. by John F. Haggerty, Asst. City Atty., Los Angeles, Cal., for defendant.

## DECISION AND ORDER

HAUK, Senior District Judge.

This matter came on for hearing before the Court on October 20, 1986 following the issuance of an opinion by the United States Supreme Court, *Golden State Transit Corp. v. City of Los Angeles,* — U.S. ——, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986), reversing the decision of the Ninth Circuit Court of Appeals in this matter, *Golden State Transit Corp. v. City of Los Angeles,* 754 F.2d 830 (9th Cir.1986), *cert. granted* 472 U.S. 1016, 105 S.Ct. 3475, 87 L.Ed.2d 611 (1985), and remanding the case for further proceedings consistent with the Supreme Court opinion, and pursuant to the filing and spreading by this Court of the mandate of the Ninth Circuit Court of Appeals, directing this Court to undertake further proceedings not inconsistent with the Supreme Court opinion.

The Court, having fully considered the points and authorities and proposed orders submitted by counsel for the parties, and the lengthy arguments presented by counsel at the October 20, 1986 hearing, and good cause appearing, hereby issues its Decision and Order herein.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the conduct of defendant City of Los Angeles ("City") in interjecting itself into a labor dispute between plaintiff Golden State Transit Corporation ("Golden State") and its taxicab drivers in 1981 by refusing to renew Golden

State's taxicab franchise until Golden State settled the labor dispute with its drivers. Since that time, this case has had a complex, and sometimes tortured, procedural history culminating now in this decision and order by the Court.

In 1980, Golden State was the largest taxicab company in Los Angeles, operating approximately 400 cabs. On March 30, 1980, Golden State—along with twelve other taxi companies operating in Los Angeles—applied for renewal of its franchise, scheduled to expire on October 29, 1980. Subsequent to the applications for renewal, the Los Angeles City Council extended all taxi franchises to March 31, 1981 to allow for an evaluation of the City's overall taxicab situation and a recommendation as to renewal by the City's Board of Transportation Commissioners.

On September 4, 1980, the City's Board of Transportation Commissioners recommended the renewal of Golden State's franchise. Meanwhile, in October 1980—while Golden State's franchise application was awaiting further evaluation and approval by the City Council—Golden State's collective bargaining agreement with its Teamster drivers expired. In order to allow operations to continue during negotiations for a new agreement, Golden State and its drivers signed an interim collective bargaining agreement. The interim agreement was to expire on February 10, 1981, the day before the full City Council was scheduled to act on the franchise renewal applications.

On February 2, 1981, the City Council's Transportation and Traffic Committee endorsed the franchise renewals recommended by the Board of Transportation Commissioners. The Committee's report stated that Golden State and five other companies were in full compliance with all terms and conditions for franchise renewal.

On February 11, 1981, the interim collective bargaining agreement between Golden State and its drivers expired and the drivers went out on strike. As scheduled, the City Council met on that date to consider the franchise renewal applications. A Teamster representative appeared at the February 11 City Council meeting and argued that Golden State's franchise should not be renewed because of the pending labor dispute. The City Council approved the renewal applications of the five other franchisees whose applications had been endorsed by the Transportation Committee and postponed consideration of Golden State's application until February 17, 1981.

At the February 17 meeting, the City Council—after again hearing the opposition of the Teamsters to approval of Golden State's franchise—granted Golden State a franchise extension to April 30, 1981 but only on the condition that the City Council expressly find on or before March 27, 1981 that such franchise extension was in the best interest of the City.

On March 23, 1981, the City Council met to consider whether it was in the best interest of the City to grant the 30–day franchise renewal to Golden State. The ongoing strike by Golden State's drivers was the predominant theme of the meeting. The City Council heard testimony from representatives of the Teamsters regarding the labor dispute. Several council members made pro-union comments during the meeting including the council president, who remarked that "it will be very difficult to get this ordinance passed … if the labor dispute is not settled by the end of the week." At the conclusion of the meeting, the City Council defeated a motion that the Council find that an extension of Golden State's franchise would be in the best interest of the City. Golden State's franchise thus was due to expire by its terms on March 31, 1981.

Golden State then filed the present action, seeking declaratory and injunctive relief and damages pursuant to 42 U.S.C. Section 1983 on the grounds that the City's action was preempted by the National Labor Relations Act ("NLRA") and violated Golden State's rights to due process of law and equal protection. On March 30, 1981, this Court granted Golden State's application for a temporary restraining order and on April 13, 1981, the Court issued a preliminary injunction against the City on the grounds that the City's action in condition-

ing the renewal of Golden State's franchise on its settlement of the labor dispute was preempted by the NLRA. *Golden State Transit Corp. v. City of Los Angeles,* 520 F.Supp. 191 (C.D.Cal.1981).

On appeal, the Ninth Circuit Court of Appeals vacated this Court's preliminary injunction, holding that because use of the streets and highways was a "traditionally local matter" reserved to state and local regulation under the police power, Golden State had little chance of prevailing on the merits of the preemption question. *Golden State Transit Corp. v. City of Los Angeles,* 686 F.2d 758 (9th Cir.1982). The United States Supreme Court denied Golden State's petition for a writ of certiorari. *Golden State Transit Corp. v. City of Los Angeles,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983).

While the above appeal was pending, the case was reassigned to then District Judge Cynthia Holcomb Hall pursuant to an order of the District Chief Judge dated December 7, 1981, creating a calendar for Judge Hall. On March 28, 1983, after Judge Hall filed and spread the mandate of the Ninth Circuit vacating the preliminary injunction issued by this Court, Golden State filed an amended complaint repeating its original causes of action and adding an additional cause of action alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. On April 28, 1983, Judge Hall denied Golden State's application for a preliminary injunction and granted the City summary judgment on the Sherman Act claim. *Golden State Transit Corp. v. City of Los Angeles,* 563 F.Supp. 169 (C.D.Cal.1983). On appeal, the Ninth Circuit affirmed Judge Hall on the Sherman Act claim. *Golden State Transit Corp. v. City of Los Angeles,* 726 F.2d 1430 (9th Cir.1984). The Supreme Court denied Golden State's petition for a writ of certiorari on the Sherman Act issues. *Golden State Transit Corp. v. City of Los Angeles,* 471 U.S. 1003, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985).

While Golden State's appeal on the Sherman Act issues was pending, Judge Hall, in an unpublished decision, granted the City summary judgment on Golden State's remaining claims, holding that the City's conduct was not preempted by the NLRA and that Golden State did not allege a sufficient constitutionally protected property interest to give rise to a claim for violation of its due process rights.[1] The Ninth Circuit affirmed Judge Hall on both points. *Golden State Transit Corp. v. City of Los Angeles,* 754 F.2d 830 (9th Cir.1985). The Supreme Court then granted Golden State's petition for a writ of certiorari, 472 U.S. 1016, 105 S.Ct. 3475, 87 L.Ed.2d 611 (1985), and reversed the Ninth Circuit ruling on the preemption question. *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986).

In reversing the Ninth Circuit, the Supreme Court relied on the so-called "Machinists" preemption doctrine, based on its decision in *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), which precludes state and municipal regulation of conduct that Congress intended to remain unregulated. The Court emphasized that the NLRA was purposefully structured by Congress to insure that the collective bargaining process was to be regulated only by " ' "the free play of economic forces." ' " 106 S.Ct. at 1398 (quoting *Machinists,* 427 U.S. at 140, 96 S.Ct. at 2553 (quoting in turn *NLRB v. Nash-Finch Co.,* 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971))).

Agreeing with this Court's finding that the City had conditioned renewal of Golden State's franchise on its settlement of the labor dispute, the Court held that the City's conduct was preempted under *Machinists* because it imposed a "positive durational limit" on the labor dispute and thereby "destroyed the balance of power designated by Congress, and frustrated Congress' decision to leave open the use of economic weapons." 106 S.Ct. at 1399–1401.

On remand, the case was returned to this Court for disposition in view of Judge Hall's elevation to the Ninth Circuit Court

---

**1.** Golden State abandoned its equal protection claim.

of Appeals. On September 15, 1986, this Court granted Golden State summary judgment on the issue of the City's liability, holding that, pursuant to the Supreme Court decision, the City's conduct in interfering with Golden State's labor dispute was preempted by the NLRA. Thus, the sole issue remaining for resolution by this Court is the nature and extent of the remedy and relief to which Golden State is factually and legally entitled.

## II. NATURE AND EXTENT OF GOLDEN STATE'S REMEDY

### A. INJUNCTIVE AND EQUITABLE RELIEF

Both Golden State and the City agree that some form of injunctive relief is appropriate here. Golden State proposes that the Court order the City to award Golden State a franchise to operate a taxicab business for a ten-year term upon the same general terms and conditions as other taxicab franchises.[2] In addition, Golden State asks the Court to enjoin the City from revoking, suspending or failing to renew Golden State's franchise for any reason relating to its collective bargaining relationship with its employees. The City, on the other hand, proposes that it grant Golden State a taxicab franchise for four years on such terms and conditions as other taxicab franchises, and that Golden State be given a reasonable time to commence operations.

Mandatory injunctive relief of the type sought here is an extraordinary remedy that should be granted only under compelling circumstances and in a limited manner to restore the status quo. *See Committee of Central American Refugees v. I.N.S.,* 795 F.2d 1434, 1441 (9th Cir.1986); *Perez-Funez v. District Director, I.N.S.,* 611 F.Supp. 990, 1001 (C.D.Cal.1984); 7–Part 2 J. Moore, J. Lucas & K. Sinclair, Jr., Moore's Federal Practice para. 65.04[1]; 42 Am.Jur.2d Injunctions §§ 16, 20. In light of this standard, the Court is of the view

that the injunction proposed by the City is the more appropriate one. When the City engaged in its preempted conduct in March 1981, Golden State was operating a fleet of approximately 400 taxicabs under an expiring four year franchise, renewable for another four years. Thus, to restore that status quo, it is appropriate to enjoin the City to award Golden State a new franchise to operate a fleet of 400 taxicabs for a four-year term. In addition, in the interest of fairness to Golden State and in view of the lapse of time since Golden State last operated a taxicab fleet, the Court should further order that Golden State be given a reasonable time, not less than six months nor more than one year from the date of entry of a final judgment in this matter, to commence its taxicab operation under the new four-year franchise. Finally, in accordance with views expressed in the opinion of the Supreme Court, the Court should also issue a corresponding prohibitory injunction barring the City from revoking, suspending, interfering with, or failing to renew Golden State's franchise for any reason related to its collective bargaining relationship with its employees or on the basis of any condition.

Golden State also asks the Court to order that the franchise awarded to it may be sold, leased, assigned, transferred or otherwise alienated without restriction other than that the City may ensure that any proposed new operator of the franchise is of good moral character. Golden State argues that if the City is given absolute veto power over a transfer of ownership, such power will effectively destroy the value of the franchise.

This Court agrees with the City's position that a grant to Golden State of a franchise that is transferable without any restrictions whatsoever would constitute relief in excess of what is equitable, and would place Golden State in a better position than it had (i.e. the status quo) in March 1981. The Court finds that the Los

---

**2.** Golden State argues that a ten-year franchise term is necessary in order to allow it ample opportunity to establish a profitable business that complies with all franchising requirements.

Golden State also argues that a ten-year franchise term will give the City adequate time for investigation should Golden State apply to transfer ownership of the franchise.

Angeles City Ordinance allowing assignment or transfer of a franchise with the consent of the City Council, but only conditioned on good moral character of the franchisee, is a necessary and fair condition to the grant of a new franchise and that requiring the City's consent with this condition will not prejudice Golden State's rights or affect the value of its new franchise. Further, the Court notes that California law fully and adequately protects Golden State against any unreasonable or arbitrary refusal to consent to a transfer of ownership by the City. *See Kendall v. Ernest Pestana, Inc.*, 40 Cal.3d 488, 220 Cal.Rptr. 818, 709 P.2d 837 (1985).

## B. MONETARY RELIEF

Golden State also argues that it is entitled to monetary relief by virtue of the fact that the City's wrongful interference in its labor dispute effectively forced it out of business. Golden State bases its claim for monetary relief on two grounds. First, Golden State asserts that pursuant to 42 U.S.C. Section 1983, it may be compensated in damages for the City's violation of both the United States Constitution's supremacy clause and the NLRA. Second, Golden State contends that even if compensatory damages are not appropriate in this case, the Court may nevertheless award monetary relief ancillary to its injunction to fully restore the status quo and to give "meaningful effect" to the injunction. Each of Golden State's arguments will be addressed in turn below.

### 1. COMPENSATORY DAMAGES

#### a. *Supremacy clause "violation"*

As discussed above, the essence of the Supreme Court's latest ruling in this case is that the City's conduct in conditioning renewal of Golden State's franchise on settlement of its labor disputes was in contravention of congressional intent in enacting the NLRA, namely to leave the collective bargaining process solely to the parties involved and to protect the free use of economic weapons by those parties. *See* 475 U.S. at ——, 106 S.Ct. at 1400. Accordingly, the Supreme Court held that the supremacy clause of the United States Constitution, U.S. Const. art. VI cl. 2, preempted the City's action. Golden State now claims that the City's "violation" of the supremacy clause entitles it to damages under 42 U.S.C. Section 1983, which provides a cause of action for a deprivation, under color of state law, "of any rights, privileges or immunities secured by the Constitution and laws." [3] Golden State's argument raises the fundamental constitutional question of whether the supremacy clause, which serves as a protection against the intrusion of state law into the sphere of federal power, may also be used as a "sword" in bringing an action for damages pursuant to Section 1983. In other words, this Court must decide whether the supremacy clause creates federally-protected rights, the deprivation of which may be redressed by a damages action under Section 1983.

In its recent decision in *White Mountain Apache Tribe v. Williams*, 798 F.2d 1205 (9th Cir.1986), *withdrawn* and *amended*, 810 F.2d 844 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987), the Ninth Circuit expressly held that the preemption of state law under the supremacy clause will not support a cause of action under Section 1983. In *White Mountain*, the plaintiffs were awarded attorneys fees pursuant to the Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988, after the United States Supreme Court ruled that state taxes imposed on plaintiffs by the State of Arizona were

---

**3.** 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

preempted by the supremacy clause.[4] The Ninth Circuit, relying on the United States Supreme Court decision in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979),[5] reversed the attorneys fees award and held that preemption under the supremacy clause, standing alone, does not give rise to a claim cognizable under Section 1983, explaining:

> [T]he Supremacy Clause, standing alone, "secures" federal rights only in the sense that it establishes federal-state priorities; it does not create individual rights, nor does it "secure" such rights within the meaning of § 1983.
>
> The primary function of the Supremacy Clause is to define the relationship between state and federal law. It is essentially a power conferring provision, one that allocates authority between the national and state governments; thus, it is not a rights conferring provision that protects the individual against government intrusion.
>
> \*   \*   \*   \*   \*   \*
>
> We thus come down on the side of the weight of authority that preemption of state law under the Supremacy Clause— at least if based on federal occupation of the field or conflict with federal goals— will not support an action under § 1983....

810 F.2d at 848, 850. *See also Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir.1983) (preemption of city airport noise ordinances will not support an action for damages under Section 1983); *see general-* ly J. Choper, *Judicial Review in the National Political Process*, 174–75 (1980) (discussing the differences between violation of the federalism provision of the Constitution and violation of the individual rights secured by the Constitution).

Golden State attempts to distinguish the *White Mountain* decision by relying on language contained in a footnote in that decision. In the footnote, the Ninth Circuit stated that in holding that the supremacy clause did not support a Section 1983 cause of action on the facts before it, it was deliberately not deciding the question of whether a Section 1983 cause of action would exist where a state law was preempted because of an actual direct conflict with the explicit provisions of the federal law. 810 F.2d at 850 n. 8. Golden State argues that here in this case, the City's action was in direct conflict with Section 8(d) of the NLRA, 29 U.S.C. § 158(d).[6] Thus, Golden State contends that the *White Mountain* decision does not apply to this case inasmuch as the preemption of the City's conduct was a preemption because of actual conflict with the NLRA, not a preemption because of a federal occupation of the labor field.

■ Golden State's argument is unpersuasive. Contrary to Golden State's assertion, this is not a case where the City's conduct was preempted because it was in "actual conflict" with the "explicit provisions" of Section 8(d). Rather, as the Supreme Court made clear in its opinion in this case, the City's conduct was preempted because it constituted regulation in an area

---

**4.** The Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988, provides in part that the prevailing party in a Section 1983 action may recover a reasonable attorneys fee as part of costs.

**5.** In *Chapman v. Houston Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court held that an allegation of the preemption of state law under the supremacy clause does not confer jurisdiction on the Federal Courts under 28 U.S.C. § 1343(3), which provides federal jurisdiction for claims commenced "[t]o redress the deprivation, under color of state law ... of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights."

**6.** Section 8(d), 29 U.S.C. § 158(d), provides in relevant part:

> For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating an agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession....

that, in the interest of a balanced federal labor policy, Congress intended to remain unregulated. 475 U.S. ——— ———, 106 S.Ct. at 1398–99. As such, the *White Mountain* decision is squarely on point. There, as here, the preemption was based on federal occupation of the field and not conflict between the challenged state law and a specific federal statute. *See* 810 F.2d at 850 n. 8. The only difference between our case here and *White Mountain* is that in *White Mountain* Congress occupied the field of Indian timber rights through affirmative regulation whereas here in this case Congress has occupied the field of collective bargaining by mandating that it remain "unregulated." *See Golden State,* 475 U.S. at ——, 106 S.Ct. at 1398. This is a distinction without a difference and does not persuade the Court to disregard the plain holding in *White Mountain.* In light of the clear statement of the Ninth Circuit as to the proper role of the supremacy clause in our constitutional jurisprudence, the Court finds the supremacy clause does not create individual rights that may be vindicated in an action for damages under Section 1983. Accordingly, the Court must, and does, refuse to award Golden State compensatory damages based on the preemption of the City's conduct under the supremacy clause.[7]

#### b. *NLRA "violation"*

■ Golden State also argues that it has a right to compensatory damages under Section 1983 by virtue of the City's "violation" of the NLRA. According to Golden State, the City's intervention into Golden State's labor dispute deprived Golden State of its collective bargaining rights under the NLRA and therefore deprived it of a right secured by the laws of the United States within the meaning of Section 1983.

Section 1983 provides a broad right of action in damages to remedy federal statutory violations. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, not every violation of a federal statute will support a Section 1983 cause of action. Rather, two distinct criteria must be satisfied for a federal statutory violation to give rise to a Section 1983 cause of action. First, the statute at issue must create a federal right in the plaintiff properly enforceable under Section 1983. Second, Congress must not have foreclosed a Section 1983 action by the terms of the statute itself. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1980).

Golden State's claim for compensatory damages cannot satisfy either of these criteria. In the first place, it is well settled that the *Thiboutot* line of cases allows a Section 1983 cause of action based on a federal statutory violation only where there has been a *direct violation* of the statute in question. *See White Mountain Apache Tribe v. Williams,* 810 F.2d at 851 n. 9. Such is not the case here. As the City

---

7. Golden State, citing the Supreme Court decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), argues that it is also entitled to damages pursuant to the Court's "inherent authority to remedy unconstitutional conduct." The Court rejects this argument. *Bivens* offers no support for Golden State's position, since it involved a violation of the fourth amendment, a constitutional provision that clearly creates individual rights. Further, the Court is aware of no case which has extended the rationale of *Bivens* to provide a cause of action for damages under the federal common law based solely on a violation of the Supremacy Clause. Indeed, the very cases cited by Golden State involved constitutional provisions which secure individual rights rather than provisions analogous to the Supremacy Clause. *See Fact Concerts, Inc. v. City of Newport,* 626 F.2d 1060 (1st Cir.1980) (licensee's first amendment rights violated), *punitive damages vacated,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Herz v. Degnan,* 648 F.2d 201 (3d Cir. 1981) (psychologist's fifth amendment right in professional license). In view of the clear and well reasoned view of the Ninth Circuit in *White Mountain* as to the proper role of the supremacy clause in our constitutional framework, any award of damages by this Court made solely on the basis of some nebulous notion of this Court's "inherent power to do justice" would be an unwarranted and unsupportable extension of both existing law and of this Court's jurisdiction. This the Court will not do.

correctly notes, it did not, and could not, violate the NLRA, or Section 8(d) specifically, since it was not a party to the collective bargaining agreement between Golden State and its Teamster drivers but rather was merely a collateral third party to the collective bargaining process. Section 8(d) of the NLRA does not create rights and obligations with respect to third parties who are not parties to a collective bargaining agreement but who, in some way, come in contact with the collective bargaining process. Rather, Section 8(d) defines the concept of collective bargaining and the obligations of the parties engaged in collective bargaining, and, in the language at issue in this case, states that the failure to make a concession during collective bargaining negotiations is not an unfair labor practice. Thus, while the Supreme Court in this case relied on Section 8(d) in holding that the City's action was preempted because it would have the effect of forcing a bargaining concession by Golden State, it would strain the language and purpose of the NLRA and misconstrue the import of the Supreme Court opinion to find that the City "directly violated" Section 8(d) solely by virtue of the fact that it took some action preempted by that section. This case does not present a situation where the City, under color of state law, took some action which violated a federal statute securing an *individual right* in Golden State. Instead, the Supreme Court ruling here in our case—as was the Ninth Circuit's ruling in *White Mountain*—is grounded on considerations of governmental power and the division of authority between the states and the federal government. Accordingly, Golden State's Section 1983 claim, based on the City's alleged violation of the NLRA, does not satisfy the first prong of the *Thiboutot-Pennhurst-Middlesex County* test.

Assuming, *arguendo*, that the facts of this case could be stretched to conclude that the City violated Section 8(d), Golden State still cannot state a cause of action for damages under Section 1983 since it is clear that the protections of the NLRA cannot be enforced in a Section 1983 action.

In determining whether a particular statute which provides the basis for a Section 1983 claim can be enforced in a Section 1983 action, the Court is obligated to look to the congressional intent in passing the statute. The question to be asked is whether the remedial scheme providing for a violation of the statute at issue is so comprehensive as to evidence a congressional intent not to include a Section 1983 action to enforce the statute. *Middlesex County*, 453 U.S. at 20, 101 S.Ct. at 2626. Under the current law in this Circuit, a Section 1983 plaintiff enjoys the benefit of a presumption that a federal statute creating enforceable rights may be enforced in a Section 1983 action. *Boatowners and Tenants Ass'n v. Port of Seattle*, 716 F.2d 669 (9th Cir.1983). However, this presumption may be rebutted by evidence that an exclusive means of enforcement, other than a Section 1983 action, is made a part of the particular statutory scheme. *Id.*

It is clear beyond dispute that Congress did not, and could not, intend to permit enforcement of the guarantees of the NLRA in an action for damages pursuant to Section 1983. Section 10 of the NLRA, 29 U.S.C. § 160, sets forth detailed and comprehensive enforcement proceedings applicable to all charges of unfair labor practices. Moreover, the Ninth Circuit has consistently held that exclusive jurisdiction over all collective bargaining matters rests with the National Labor Relations Board, and that the Federal District Court lacks jurisdiction to address the merits of unfair labor practice claims or to consider or redress violations of Section 8 of the NLRA. *See Waggoner v. Dallaire*, 767 F.2d 589, 592 (9th Cir.1985); *Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1515–17 (9th Cir.1985).

The comprehensive enforcement scheme created by Congress in enacting the NLRA evidences a clear Congressional intent to preclude enforcement of collective bargaining rights in a damage action under Section 1983. Accordingly, the Court finds that the *Boatowners* presumption is rebutted with respect to Section 8(d) of the NLRA

and, therefore, concludes that Golden State's Section 1983 claim must fail under the second prong of the *Thiboutot-Pennhurst-Middlesex County* test.

In view of the foregoing discussion, the Court is of the view that Golden State's allegations that the City somehow "violated" Section 8(d) of the NLRA do not give rise to a cause of action for damages cognizable under Section 1983. Accordingly, the Court will not award Golden State compensatory damages in this case.

### 2. MONETARY RELIEF IN SUPPORT OF INJUNCTION

Golden State asks this Court to award it monetary relief in conjunction with the Court's award of the injunctive relief discussed previously. According to Golden State, absent some award of monetary relief, the injunction issued by the Court will be meaningless since as a result of the City's preempted conduct it no longer possesses the financial resources to operate a taxicab franchise. Golden State asks the Court to award it ancillary monetary relief in an amount sufficient to enable it to purchase a fleet of taxis, reestablish its maintenance facilities, and hire a new workforce.

The City does not dispute that the Court has broad and flexible monetary remedial powers. However, the City relying on *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) and *Mitchell v. Robert de Mario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1959), argues that ancillary monetary relief is not available to Golden State in this case since such relief is only appropriate where necessary to disgorge illegal gains from a defendant or to reimburse a plaintiff for sums wrongfully paid to a defendant. Alternatively, the City argues that even if ancillary monetary relief is appropriate in this case, the proper measure of such relief is the net value of Golden State's assets on March 31, 1981, *i.e.*, the fair market value of such assets on that date minus amounts received for the sale of such assets and the amount of any lien or other encumbrance on the assets.[8] This would be the obvious salvage value. The City contends that any other measurement of monetary relief would be highly speculative and would constitute a windfall to Golden State.

■ The positions of Golden State and the City are both meritorious. It is clear that the Court does in fact have broad equitable powers to fashion a remedy appropriate under the facts of this case. *See Hecht v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (court may go beyond matters immediately underlying its equitable jurisdiction and decide whatever additional relief may be necessary under the circumstances); *Handler v. Securities and Exchange Commission*, 610 F.2d 656, 659 (9th Cir.1979) (district court is inherently vested with broad equitable powers and has the authority to mold its decree to the necessities of a particular case). Because of Golden State's drastically changed circumstances, resulting in large part from the City's nonrenewal of its franchise, any injunction granting Golden State a new franchise without some corresponding monetary relief, would be a hollow remedy indeed. This is because Golden State presently lacks the financial resources to recommence its taxicab operation. In light of this, the Court is of the opinion that an award of ancillary monetary relief to Golden State is both necessary and appropriate to give meaning and effect to the injunctive relief award in this case.[9]

---

8. On March 31, 1981, Golden State went into Chapter 7 bankruptcy liquidation proceedings.

9. The Court is not persuaded by the City's attempt to limit the situations in which ancillary monetary relief is appropriate. While the *Porter* and *Mitchell* cases do in fact present two fact situations where equitable monetary relief was awarded, an award of such relief is not limited by those cases but is also appropriate in a wide range of other factual settings. *See, e.g., United States v. Price*, 688 F.2d 204 (3d Cir.1982) (defendant enjoined from dumping hazardous wastes and required to pay for diagnostic study at dump site); *Crawford v. University of North Carolina*, 440 F.Supp. 1047 (M.D.N.C.1977) (University ordered to provide interpreter to

The Court agrees with the City that to make an award of monetary relief to Golden State in an amount equal to Golden State's lost profits, or other amounts necessary to purchase a *new* fleet of taxicabs, would be highly speculative and would constitute a windfall to Golden State. This is especially true in light of the fact that Golden State became later involved in Chapter 11 bankruptcy proceedings in March, 1981. Because the purpose of monetary relief ancillary to an injunction is not to compensate a plaintiff for its losses but rather to restore the status quo at the time the defendant's wrongful conduct occurred, the Court finds that the appropriate measure is the salvage value of Golden State's franchise on March 23, 1981, the date the harmful action of the City occurred. This amount of monetary relief will be determined after trial by the Court, sitting without a jury, in calculating the fair market value of Golden State's assets on March 23, 1981, and then subtracting any amounts received by Golden State in the Chapter 7 bankruptcy liquidation of those assets on March 31, 1981.[10]

One final issue remains for resolution by the Court. Subsequent to the expiration of its franchise on March 31, 1981, Golden State went into Chapter 7 bankruptcy liquidation proceedings. During the course of these proceedings, Eugene Maday, the former sole owner of Golden State, purchased Golden State's interest in this litigation of the bankruptcy sale. The Court expresses no opinion as to the fairness of this sale to Mr. Maday. However, the Court will condition the payment of any ancillary monetary relief by way of salvage value in this case on the recommencement of a viable taxi business by Maday or a transferee from Maday.

Of course, if Mr. Maday wishes to recommence a taxicab business and then sell the on-going franchise with the salvage value of the assets, he is free to do so. If Mr. Maday has no intention of resuming operations, he is still free to sell the franchise and the salvage value of the assets to any one of good moral character.

### III. CONCLUSION AND ORDER

For the reasons set forth in this Decision, and good cause appearing, it is hereby ordered that an injunction be entered as follows:

1. That Defendant City of Los Angeles shall grant and award to Plaintiff Golden State Transit Corporation a franchise to operate a fleet of 400 taxicabs within the City of Los Angeles for a four-year term.

2. That Plaintiff Golden State Transit Corporation shall be given a reasonable time, not less than six months nor more than one year from the date of entry of a final judgment in this matter, in which to commence its taxicab operation before the four-year franchise term begins to run.

3. That Defendant City of Los Angeles shall not revoke, suspend, interfere with, or fail to renew the franchise awarded to Plaintiff Golden State Transit Corporation pursuant to this Decision and Order for any reason relating to Golden State Transit Corporation's collective bargaining relationship with its employees on the basis of any condition or circumstances relating to the preempted conduct of the City of Los Angeles.

4. That Plaintiff Golden State Transit Corporation shall not recover compensatory damages from the City of Los Angeles pursuant to 42 U.S.C. Section 1983.

5. That Plaintiff Golden State Transit Corporation shall be awarded monetary relief ancillary to and in furtherance of the above injunction issued by the Court, in an amount equal to the salvage value of Golden State Transit Corporation's taxicab franchise on March 23, 1981. The exact amount of said salvage value shall be determined upon trial by the Court, sitting

---

deaf student and to pay the costs of such interpreter.)

**10.** Golden State has no constitutional right to a jury trial with respect to the ancillary monetary relief to be awarded by the Court, since such relief is an equitable rather than legal remedy. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). *See also* 9 Wright & Miller, *Federal Practice & Procedure* § 2302.

without a jury, said trial to be scheduled at such time as the appellate remedies available to the parties in this matter have been exhausted.

Let Interim Judgment be rendered and entered in accordance with the foregoing and in conformity with the findings and conclusions set forth in this Decision and Order.

## CERTIFICATION FOR IMMEDIATE INTERLOCUTORY APPEAL OF ORDER AND INTERIM JUDGMENT

This Order and the Interim Judgment are certified for immediate interlocutory appeal pursuant to 28 U.S.C. Section 1292(b). The Court finds and is of the opinion that the Order and the Interim Judgment involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal therefrom will materially advance the ultimate termination of the litigation. All further proceedings on this matter in this Court are hereby stayed pending final disposition of such appeal.

## INTERIM JUDGMENT FOR INJUNCTION

This matter having come on regularly for hearing before the Honorable A. Andrew Hauk, United States District Judge, on October 20, 1986, and the Court having fully considered the pleadings, and points and authorities submitted by counsel for the parties, and the arguments made by counsel at the October 20, 1986 hearing, and good cause appearing;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. That defendant City of Los Angeles shall forthwith grant and award to plaintiff Golden State Transit Corporation a franchise to operate a fleet of 400 taxicabs within the City of Los Angeles for a four-year term.

2. That plaintiff Golden State Transit Corporation shall be given a reasonable time, not less than six months nor more than one year from the date of entry of a final judgment in this matter, in which to commence its taxicab operation before the four-year franchise term begins to run.

3. That defendant City of Los Angeles shall not revoke, suspend, interfere with, or fail to renew the franchise granted and awarded to Plaintiff Golden State Transit Corporation pursuant to the written Decision, Order and the Interim Judgment for any reason relating to Golden State Transit Corporation's collective bargaining relationship with its employees on the basis of any condition or circumstances relating to the preempted conduct of the City of Los Angeles.

4. That plaintiff Golden State Transit Corporation shall not recover compensatory damages from the City of Los Angeles pursuant to 42 U.S.C. Section 1983.

5. That plaintiff Golden State Transit Corporation shall be awarded monetary relief ancillary to and in furtherance of the injunction issued herein by the Court, in an amount equal to the salvage value of Golden State Transit Corporation's taxicab franchise on March 23, 1981. The exact amount of said salvage value shall be determined upon trial by the Court, sitting without a jury, said trial to be scheduled at such time as the appellate remedies available to the parties in this matter have been exhausted.