**GOLDEN STATE TRANSIT CORPORATION, a California corporation, doing business as Yellow Cab of Los Angeles, Plaintiff,**

v.

**The CITY OF LOS ANGELES, a municipal corporation, Defendant.**

**No. CV 81–1519 AAH (Tx).**

United States District Court, C.D. California.

Aug. 23, 1991.

Zachary D. Fasman, Norman A. Dupont, John P. Carey, Keith F. Millhouse, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for Golden State Transit Corp.

Alan I. Rothenberg, Kenneth W. Oder, Brent E. Johnson, Patrick D. Quinlan, Latham & Watkins, Los Angeles, Cal., for City of Los Angeles.

## DECISION AND ORDER RE MOTION FOR PRE–JUDGMENT INTEREST AND JUDGMENT

HAUK, Senior District Judge.

This matter came on for hearing before the Court on the issue of prejudgment interest on August 12, 1991, following a jury trial and verdict for Golden State for $4.5 million. The trial followed the issuance of an opinion by the United States Supreme Court, *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), reversing the Ninth Circuit Court of Appeals in this matter, *Golden State Transit Corp. v. City of Los Angeles*, 857 F.2d 631 (9th Cir.1988), and remanding the case for further proceedings consistent with the Supreme Court opinion, and pursuant to the filing and spreading by this Court of the mandate of the Ninth Circuit Court of Appeals, 895 F.2d 1281, directing this Court to undertake further proceedings consistent with the Supreme Court opinion.

On the issue of prejudgment interest, this Court having fully considered the points and authorities, proposed findings of fact and conclusions of law, and proposed orders submitted by counsel for the parties; the arguments presented by counsel at the August 12, 1991 hearing; and the supplemental briefs filed during the week following the hearing; and good cause appearing, hereby issues its Decision and Order herein.

## I. BACKGROUND AND PROCEDURAL HISTORY [1]

This case arose in 1981 when the Defendant City of Los Angeles (hereinafter "City" or "Defendant") interjected itself into the labor dispute, between Plaintiff Golden State Transit Corporation (hereinafter "Golden State" or "Plaintiff") and its taxicab drivers,[2] by refusing to renew Golden State's taxicab franchise until Golden State settled its labor dispute with its drivers. The City also denied Golden State's application for a rate increase, previously recommended by various subordinate City agencies, and subsequently granted to all of the other taxicab companies. In addition, the City denied Golden State's request to lease taxicabs. Since that time, this case has had a complex, and sometimes tortured, procedural history culminating now in this decision and order by the Court.

Golden State filed this action seeking declaratory and injunctive relief, as well as damages, pursuant to 42 U.S.C. § 1983, on the grounds that the City's action was preempted by the National Labor Relations Act, 29 U.S.C. § 151 et seq. (hereinafter "NLRA"), and violated Golden State's rights to due process of law and equal protection. Golden State later amended the complaint to also allege that the City's action violated Section 1 of the Sherman Act, 15 U.S.C. § 1. On March 30, 1981, this Court, Judge A. Andrew Hauk presiding, granted Golden State's application for a temporary restraining order, and on April 13, 1981, this Court issued a preliminary injunction forbidding the City from terminating Golden State's franchise. *See Golden State Transit Corp. v. City of Los Angeles*, 520 F.Supp. 191 (C.D.Cal.1981) (Hauk, J.).

The Ninth Circuit Court of Appeals vacated the injunction, holding that neither the federal labor law nor the Equal Protection Clause precluded the City from refusing to renew Golden State's franchise while granting franchises to other taxicab companies. *See Golden State Transit Corp. v. City of Los Angeles*, 686 F.2d 758 (9th Cir.1982). The Supreme Court denied certiorari. *Golden State Transit Corp. v. City of Los Angeles*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983).

The case was returned to District Court Judge Cynthia Holcomb Hall.[3] Golden State continued limited operations under the restraining order until April 28, 1983, when Judge Hall, in an unpublished decision, denied Golden State's application for a preliminary injunction. The City then ordered Golden State to cease and desist operation, and Golden State terminated operations.

On April, 28, 1983, Judge Hall also granted partial summary judgment for the City on the Sherman Act cause of action, holding that the City's regulation of the taxicab business was within the "state action" exemption from Sherman Act liability. *See Golden State Transit Corp. v. City of Los Angeles*, 563 F.Supp. 169 (C.D.Cal.1983) (Hall, J.). The Ninth Circuit affirmed. *See Golden State Transit Corp. v. City of Los Angeles*, 726 F.2d 1430 (9th Cir.1984).

While Golden State's appeal on the Sherman Act issue was pending, Judge Hall, in another unpublished decision, granted the City summary judgment on Golden State's remaining claims, holding that the City's conduct was not preempted by the NLRA and that Golden State did not allege a sufficient constitutionally protected property interest to give rise to a claim for violation of its due process rights.[4] The Ninth Circuit affirmed on both points. *See Golden State Transit Corp. v. City of Los Angeles*, 754 F.2d 830 (9th Cir.1985).

The Supreme Court reversed, holding that the City's action was preempted, since the NLRA prevented state and local governments from interfering with the economic weapons of employers or employees.

---

**1.** For a complete and detailed factual history, *see Golden State Transit Corp. v. City of Los Angeles*, 660 F.Supp. 571, 572–75 (C.D.Cal.1987).

**2.** The drivers were represented by the Teamsters union.

**3.** The case was reassigned pursuant to an order creating a calendar for Judge Hall.

**4.** Golden State had abandoned its equal protection claim.

*See Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) (Golden State I).

On remand, the case was returned to Judge Hauk, in view of Judge Hall's elevation to the Ninth Circuit Court of Appeals. On September 15, 1986, in an unpublished decision, this Court granted summary judgment for Golden State on the issue of the City's liability, holding that, pursuant to the Supreme Court's decision in *Golden State I,* the NLRA preempted the City from interfering in Golden State's labor dispute.

On April 23, 1987, this Court held that Golden State was entitled to a mandatory injunction, and the City was required to give Golden State a new four-year franchise. *See Golden State Transit Corp. v. City of Los Angeles,* 660 F.Supp. 571 (C.D.Cal.1981) (Hauk, J.). In addition, this Court held that Golden State was not entitled to any compensatory damages. The Court found that the City's violation of the Supremacy Clause did not create a right in Golden State that was protected by 42 U.S.C. § 1983 (hereinafter "§ 1983"). *Golden State,* 660 F.Supp. at 578. The Court also found that the City's violation of the NLRA did not create a cause of action under § 1983, because the NLRA only covered direct violations between management and the union, and even if the NLRA did create a right, Congress had foreclosed a remedy by creating a comprehensive enforcement mechanism. *Id.* at 579–80. Nevertheless, this Court awarded monetary relief in the form of ancillary damages to support the injunction, in the amount of the salvage value. *Id.* at 580–81.

However, at the same time that the Court made the above holdings, the Court stayed both the interim judgment and order, and certified both for immediate appeal. *Id.* at 582. The Ninth Circuit affirmed this decision. *See Golden State Transit Corp. v. City of Los Angeles,* 857 F.2d 631 (9th Cir.1988).

The Supreme Court reversed and remanded. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (Golden State II). The Supreme Court reaffirmed the rule that a violation of the Supremacy Clause did not create a cause of action under § 1983. *Id.* at ——, 110 S.Ct. at 449. However, the Court held that the NLRA did invest in the parties a right not to be interfered with by state or local government. *Id.* at ——, 110 S.Ct. at 450. Golden State was a beneficiary of the statutory scheme that prevented government interference in the use of economic weapons. *Id.* Furthermore, Congress did not preclude this action, but created a comprehensive enforcement scheme that protected this right. *Id.* at ——, 110 S.Ct. at 450–51. Thus, since the City interfered with Golden State's use of economic weapons, Golden State was entitled to maintain a § 1983 action for compensatory damages. *Id.* at ——, 110 S.Ct. at 452.

Liability already having been determined by this District Court's granting of summary judgment, the case was returned to this Court for a determination of the nature and extent of the compensatory damages to which Golden State was factually and legally entitled. The trial commenced on May 14, 1991. After approximately five weeks of testimony and five days of deliberation, on June 20, 1991, the jury returned a verdict awarding Golden State $4.5 million in compensatory damages, representing the value of Golden State's business in 1981.

The City moved for judgment notwithstanding the verdict and a new trial, or in the alternative, a remittitur. On August 12, 1991, this Court denied both of the City's motions.

Golden State moved for an award of prejudgment interest.[5] On August 12, 1991, this Court announced its tentative ruling, took the matter under advisement, and the parties filed post-hearing submissions. Thus, the sole issue remaining for resolu-

---

**5.** The parties agreed in the Pretrial Conference Order to have the Court determine the issue of prejudgment interest after the jury's verdict.

tion by this Court is whether Golden State is entitled to prejudgment interest, and if so, to what extent.[6]

## II. MOTION FOR PREJUDGMENT INTEREST

### A. Is Prejudgment Interest Available?

Since neither 42 U.S.C. § 1983 nor 42 U.S.C. § 1988 mention the award of prejudgment interest, and there is no general federal statute governing the award of prejudgment interest,[7] this Court must first determine whether it has the power to award prejudgment interest under the appropriate rule of law, and if it does, whether it should award prejudgment interest. This Court notes that the issue of whether prejudgment interest is available under 42 U.S.C. § 1988 appears to be one of first impression for a court within the Ninth Circuit.[8]

#### 1. *Choice of Law for Prejudgment Interest*

Golden State and the City dispute what law the Court should apply to determine whether prejudgment interest is available under § 1983. In sum, Golden State argues that federal law should apply, and the City argues that state law should apply.

■ Golden State and the City agree that a three-step analysis is appropriate to determine the rules applicable to civil rights actions, specifically § 1988:[9]

First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal statutes] into effect." [42 U.S.C. § 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (citations omitted).

■ Applying the first step, Golden State admits that there is no general federal statute mandating prejudgment interest. However, Golden State contends federal law consists of both statutory and case law. Under federal case law, when a federal statute is silent as to prejudgment interest, the Court should fashion a federal rule which grants or denies prejudgment interest based on the *congressional purpose* of the particular statute. *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 6–7, 92 L.Ed. 3 (1947). A statute's failure to mention prejudgment interest does not necessarily manifest a congressional intent to bar interest. *Id.*

■ In this case, the applicable statute is 42 U.S.C. § 1983. The purpose of a § 1983 damages award is to compensate the plaintiff for injuries caused by the deprivation of constitutional rights. *See Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). Prejudgment interest is an element of compensation, not a penalty. *See Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d

---

**6.** This Court will also determine, at a date not yet set, the amount of the reasonable attorneys' fees to which Golden State is entitled under 42 U.S.C. § 1988.

**7.** Although 28 U.S.C. § 1961 does not explicitly mention that it applies only to post-judgment interest, courts have so held. *See, e.g., Wildman v. Burlington Northern Railroad Co.*, 825 F.2d 1392, 1396 (9th Cir.1987).

**8.** This Court could not find any published opinions ruling on the issue, nor were any cited by the parties.

**9.** In relevant part, 42 U.S.C. § 1988 states:

"The jurisdiction ... [of] the district courts ... for the protection of ... civil rights ... shall be exercised and enforced in conformity with the laws of the United States, in so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction ... is held, so far as the same is not inconsistent with the Constitution and the laws of the United States, shall be extended to and govern ..."

1280, 1288 (9th Cir.1984). Therefore, Golden State argues, and this Court concludes, that federal law gives sufficient guidance to determine whether an award of prejudgment interest is appropriate.

The City argues that since federal law is silent as to prejudgment interest, it is "deficient," and therefore, state law governs. In support of its argument, the City cites *Robertson v. Wegmann,* 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978), a § 1983 case in which the Supreme Court did hold federal law to be deficient. However, the statute at issue in *Robertson* was a state survivorship statute. The Supreme Court noted that the goal of § 1983 was to compensate those injured by a deprivation of rights. However, in that case, the issue was not whether the injured party would be compensated, but whether the right survived his or her death, or abated. There was no federal law on that issue. Under such circumstances, the Supreme Court found federal law to be silent, and state law to be applicable. This Court holds that *Robertson* is clearly distinguishable, since there is sufficient federal case law which governs the award of prejudgment interest.

Moreover, several courts in other circuits have held that federal law applies to the issue of prejudgment interest. For example, the Third Circuit has held that federal common law must be applied to the issue of prejudgment interest in § 1983 suits to effect uniformity, otherwise the Civil Rights Acts would fail to effect the purpose and ends which Congress intended. *See Savarese v. Agriss,* 883 F.2d 1194, 1207 (3d Cir.1989).

Similarly, the First Circuit has held that federal law governs prejudgment interest in § 1983 actions, since courts are required to look first to federal law. *See Furtado v. Bishop,* 604 F.2d 80, 97 (1st Cir.1979),

*cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). The First Circuit noted that the Supreme Court had indicated that federal courts should fashion appropriate rules for damages in § 1983 actions, and that it thought that the issue of prejudgment interest was closely allied with that of damages. *Id.* at 97.[10]

The Eastern District of New York also found that the application of federal law was appropriate for awarding prejudgment interest on a § 1983 claim. *See Orshan v. Macchiarola,* 629 F.Supp. 1014, 1017 (E.D.N.Y.1986) (finding suitable remedies under federal law, therefore resort to state law was unnecessary).

The City attempts to discredit the cases cited by Golden State, claiming that they do not follow the proper analysis required by § 1988 and *Robertson,* and thus they incorrectly conclude that federal law governs. This Court is not persuaded by this argument.

The City also cites a Fifth Circuit case in which the court held that state law governs the calculation of prejudgment interest in § 1983 cases. *Pressey v. Patterson,* 898 F.2d 1018, 1026 (5th Cir.1990). Ironically, there is no discussion at all in *Pressey* as to why state law applies, as the City claims is required, and the court appears to acknowledge that other circuits have held differently. *Id.* at 1026 ("[I]n this circuit at least, state law governs the calculation of prejudgment interest.").

Despite the City's contentions, the numerous cases cited by the City hold that federal courts *may* apply rules of state law to questions as to which Congress has not provided clear guidance,[11] and cases where state law was applied since it was not inconsistent with federal law.[12] However,

10. This Court acknowledges that, in *Furtado,* although the First Circuit discussed formulating a rule, the court was unclear whether federal common law allowed for prejudgment interest.

11. *See Hess v. Eddy,* 689 F.2d 977, 980 (11th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983) ("In actions brought pursuant to 42 U.S.C. § 1983, federal courts may indeed apply rules of state law to

questions as to which Congress has not provided clear guidance."); *Miller v. Apartments and Homes of New Jersey, Inc.,* 646 F.2d 101, 106 (3rd Cir.1981) (under § 1988 federal courts may adopt state laws in civil rights actions).

12. *Cramer v. Crutchfield,* 648 F.2d 943, 945 (4th Cir.1981) ("Because we do not find Virginia's rule on tolling the statute of limitations to be inconsistent with federal law, we follow it.")

none of these cases say that the district court *must* apply state law. In addition, in many cases state law was applied to expand the remedies available to the injured plaintiff, not to limit them.[13]

In sum, this Court finds the City's arguments unpersuasive, and based upon the authorities cited above, and the arguments set forth by Golden State, this Court holds that federal law applies.

### 2. *Application of Federal Law*

■ Golden State contends that it is entitled to an award of prejudgment interest under federal law. Not surprisingly, the City claims Golden State is not entitled to such an award.

Golden State argues that an award of prejudgment interest has become an accepted and ordinary part of compensatory damages under most federal statutes, since it "compensates the injured party for the loss of the use of money he otherwise would have had." *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 886 F.2d 1545, 1550 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990) (copyright case). Golden State cites various other federal question cases where the Supreme Court has affirmed an award of prejudgment interest to fully compensate the injured party.[14]

There appears to be no Ninth Circuit § 1983 cases ruling on the availability of prejudgment interest. However, under most federal causes of action, the Ninth Circuit has held that prejudgment interest is available, when the underlying statute is silent, where the goal of the statute is to compensate the wronged party.

For example, the Ninth Circuit has affirmed the award of prejudgment interest in a race discrimination case under 42 U.S.C. § 1981. See *Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984) (affirming award of prejudgment interest). The *Satterwhite* case is especially persuasive to this Court since, although not decided under 42 U.S.C. § 1983, it was decided under 42 U.S.C. § 1981, another portion of the Civil Rights Act.

The Ninth Circuit has also held that prejudgment interest is available in an age discrimination suit, brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). See *Criswell v. Western Airlines, Inc.,* 709 F.2d 544, 556–57 (9th Cir. 1983), *aff'd,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). In affirming an award of such relief, the Ninth Circuit stated that ADEA authorizes courts "to grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the act. *Id.* The Court further stated that "[p]rejudgment interest is intended to compensate 'the loss of use of this money during the period payments [are] withheld from [ADEA plaintiffs].' " (citation omitted). The Ninth Circuit held that the district court properly exercised its equitable powers by awarding prejudgment interest on their back pay awards. *Id.* at 557. Similar reasoning applies to an award in this case.

Moreover, the Ninth Circuit has held, in a case under the Fair Labor Standards Act ("FLSA"), that it is an abuse of discretion not to include prejudgment interest in back-pay awards. *Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986). The Court stated that the reason for awarding prejudgment interest is to make whole the employees who

---

**13.** *See, e.g., Hesselgesser v. Reilly,* 440 F.2d 901, 903 (9th Cir.1971). In that case, the Ninth Circuit merely states that the Civil Rights Act authorizes the application, under appropriate circumstances, of state laws pertaining to vicarious liability and liability created by statute. The court found that state statutes making sheriffs liable for the misconduct of their deputies, when applied to civil rights deprivations by the deputies, were not inconsistent with the federal law. *Id.* Thus, in that case, state law was used to *create* additional remedies, not remove them when available under federal law. In this case,

the City is arguing both that state law is applicable and that state law would not allow Golden State to recover.

**14.** *See Jacobs v. United States,* 290 U.S. 13, 17, 54 S.Ct. 26, 28, 78 L.Ed. 142 (1933) (prejudgment interest awarded under Fifth Amendment for governmental "taking"); *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655–56, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983) (award in patent case proper).

were deprived of their wages unlawfully. *Id.* An award of prejudgment interest also serves to discourage unlawful employment practices by denying to employers the interest-free use of the money that is being delayed by the judicial process. *Id.*

Furthermore, the Ninth Circuit has upheld an award of prejudgment interest in several admiralty cases, even where the claim was based on an unliquidated sum. *See Vance v. American Hawaii Cruises, Inc.*, 789 F.2d 790, 794 (9th Cir.1986) (the purpose of prejudgment interest is to make plaintiff whole); *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984). The Ninth Circuit has also held that prejudgment interest is available under the 1909 Copyright Act. *See Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1551 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). And the Ninth Circuit has awarded prejudgment interest in a tax case. *U.S. v. California State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd,* 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982).[15] This Court also notes that the Northern District of California has stated that "a presumption favoring the award of prejudgment interest at defendants' cost of funds applies [to federal claims]." *In re Oracle Securities Litigation*, 132 F.R.D. 538 (N.D.Cal.1990).

On the other hand, the Ninth Circuit has held that prejudgment interest is not available for actions under the Federal Employers' Liability Act ("FELA"). *See Wildman v. Burlington Northern Railroad Co.*, 825 F.2d 1392, 1396 (9th Cir.1987). Although this Court acknowledges such holding, this Court does not find it controlling in this case. In the context of FELA, Congress crafted a then unique scheme of compensation separate from the common law, and Congress' failure to provide expressly for prejudgment interest indicates an intent not to so provide. *See Wilson v. Burlington Northern Railroad Co.*, 803 F.2d 563,

565 (10th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987) (cited in *Wildman* at 1396.) Congress has not so expressly elaborated with § 1983.

In addition, guided by the principles of full compensation and deterrence, other courts have awarded prejudgment interest in § 1983 cases. *See Hall v. Ochs*, 817 F.2d 920, 926 (1st Cir.1987) (prejudgment interest awarded successful § 1983 plaintiffs who charged assault and battery, false arrest and imprisonment); *Gorelangton v. City of Reno*, 638 F.Supp. 1426, 1433 (D.Nev.1986) (prejudgment interest awarded at 12% per annum on § 1983 claims of false arrest and wrongful death); *DeLaCruz v. Pruitt*, 590 F.Supp. 1296, 1309 (N.D.Ind.1984) (prejudgment interest awarded in case because it serves to further the congressional purposes underlying § 1983).

In this case, Golden State argues that prejudgment interest is necessary to make it whole. Although the wrong occurred in 1981, Golden State has been without compensation for 10 years. In addition, Golden State contends that the denial of prejudgment interest would flaunt § 1983's goal of deterrence, since the City would be paying off its 1981 debt with less valuable 1991 dollars. Furthermore, Golden State contends that prejudgment interest would prevent the City from reaping a windfall from its misconduct.

On the other hand, the City contends that even if federal law applies, Golden State is not entitled to prejudgment interest because its claim was for unliquidated damages. The City argues that since § 1983 "creates a species of tort liability," the common law of torts should be applied. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The City cites various cases for the proposition that under the common law rule of torts, parties are not entitled to prejudgment interest on unliquidated claims. *See* Defendant's Opposition p. 10. The City contends that the

---

**15.** In support of the award, the Court stated that "[t]he award of pre-judgment interest in a case under federal law is a matter left to the sound discretion of the trial court," and such awards

"are governed by considerations of fairness, and are awarded when it is necessary to make the wronged party whole." *California State Bd.* at 1132 (citations omitted).

common law rationale, which denies prejudgment interest on unliquidated claims, applies equally to unliquidated § 1983 claims, since the City could not have readily determined the amount of damages due for earlier settlement.

The City contends that other circuits have followed this common law rule, and this Court acknowledges that some other courts have. *See, e.g., Winter v. Cerro Gordo County Conservation Bd.*, 925 F.2d 1069, 1073 (8th Cir.1991) (under Iowa law, plaintiff could recover prejudgment interest only on ascertainable wages); *see also Strandell v. Jackson County, Ill.*, 634 F.Supp. 824, 834 (S.D.Ill.1986). For example, in *Strandell*, the Southern District of Illinois found that "there is simply no reason to apply a rule other than the common law tort rule disallowing prejudgment interest on unliquidated claims" to § 1983 claims. However, the City fails to point out that the court in *Strandell* did acknowledge that common law tort rules are not binding in § 1983 cases, citing *Carey* 435 U.S. at 258–59, 98 S.Ct. at 1049–50.

Furthermore, while *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978), encourages the court to look to the common law of torts in determining damages under § 1983, *Carey* also states that the court should do so only where there is a tort that closely parallels the interests protected by the federal right that has been violated, and the analogous common law damage principles afford full compensation. *See Carey* at 258–59, 98 S.Ct. at 1049–50. Where this necessary compensation would be denied due to some deficiency in common law tort analogy, *Carey* requires courts to tailor "the rules governing compensation ... to the interests protected by the particular right in question." *Id.* Thus, in this case, if the common law would deny a remedy to Golden State, the common law should be rejected in favor of compensation to plaintiff, as required by *Carey.*

■ Moreover, federal law does not require the denial of prejudgment interest just because Golden State's claim was not "liquidated." Federal courts clearly have the latitude to award prejudgment interest in cases arising under the patent, copyright, antitrust laws, and tax laws, where claims are also not liquidated. There is no reason to distinguish those cases from cases under § 1983, such as this one. *See, e.g., Gorelangton v. City of Reno*, 638 F.Supp. 1426, 1433 (D.Nev.1986) (prejudgment interest awarded on § 1983 claims for unliquidated claims of false arrest and wrongful death).

This Court finds that under federal law, this Court has the power to award plaintiff prejudgment interest, since it is within the Court's discretion. The Ninth Circuit non-§ 1983 cases support the availability of such an award. *See, e.g., Western Pacific Fisheries v. SS President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984) (prejudgment interest is element of compensation, and it is up to court's discretion whether or not to award it); *U.S. v. California State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd*, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982) (the award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court).

Furthermore, prejudgment interest has been awarded in many other federal question cases. *See Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1550 (9th Cir.1989) (copyright case); *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir.1986) (back-pay award); *Western Pacific Fisheries v. SS President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984) (admiralty case); *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556–57 (9th Cir.1983), *aff'd*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (age discrimination suit); *U.S. v. California State Board of Equalization*, 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd*, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982) (tax case).

In addition, other courts have awarded prejudgment interest in § 1983 cases. *See Savarese v. Agriss*, 883 F.2d 1194, 1207 (3d Cir.1989); *Orshan v. Macchiarola*, 629 F.Supp. 1014, 1017 (E.D.N.Y.1986). This Court finds the cases holding otherwise not controlling.

### 3. *Application of State Law*

Assuming, arguendo, that the City is correct in its assertion that state law applies, since this court sits in California, California law would apply. *See* 42 U.S.C. § 1988. Under California law, Golden State contends it is entitled to prejudgment interest; the City claims it is not so entitled.

■ The City claims that under California law, a successful plaintiff is not entitled to prejudgment interest unless the amount awarded represents a sum certain that vested in the plaintiff on a particular date. Cal.Civ.Code § 3287(a) (1970). Damages are not certain when, as here, "a defendant does not know what amount he owes and cannot ascertain it except by accord or judicial process ..." *Levy–Zentner Co. v. Southern Pac. Transp. Co.*, 74 Cal.App.3d 762, 799, 142 Cal.Rptr. 1, 25 (Cal.Ct.App. 1977). It is undisputed that in this case, the damages were not made certain until resolution by trial.

However, Golden State correctly argues that the California Civil Code has two separate statute sections governing the availability of prejudgment interest. Section 3287 has two subsections, neither of which are applicable. Section 3287(a) covers interest on sum certain damages. Section 3287(b) covers damages for breach of contract for an unliquidated sum.

However, section 3288 covers interest on damages "in actions other than contract," and states that "interest may be given, in the discretion of the jury."[16] "Unlike Civil Code section 3287, which relates to liquidated and contractual claims, section 3288 permits discretionary prejudgment interest for unliquidated tort claims." *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal.3d 86, 102, 160 Cal. Rptr. 733, 741, 603 P.2d 1329 (Cal.1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980). Furthermore, the policy underlying an award of prejudgment interest under § 3288 is to fully compensate the injured party. *See Canavin v. Pacific*

*Southwest Airlines*, 148 Cal.App.3d 512, 526, 196 Cal.Rptr. 82, 90 (Cal.Ct.App.1983).

The same discretion given to the jury is granted to the trial judge when acting as the trier of fact. *See In re Pago Pago Aircrash of January 30, 1974*, 525 F.Supp. 1007, 1012 n. 2 (C.D.Cal 1981). In this case, the parties stipulated that the judge would determine the issue of prejudgment interest. Therefore, under California law, the decision of whether to award prejudgment interest is within the discretion of this Court.

Golden State states that even if under California law it would not be entitled to recover prejudgment interest, the denial of prejudgment interest based on California law would do violence to the federal remedial scheme of compensation under § 1983. It would thus violate § 1988, which allows federal courts to look to state law as a secondary source only "so far as the same is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988. The Ninth Circuit has stated that " '[t]here is no doubt that the damages awardable under 42 U.S.C. § 1983 are a matter of federal law. California cannot set up a policy subversive of that law." *Cornwell v. City of Riverside*, 896 F.2d 398, 399 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990). Golden State contends that similarly, since prejudgment interest is an element of damages, California law cannot undermine such an award.

Not surprisingly, the City attempts to argue that state law is not inconsistent with federal law. In *Robertson v. Wegmann*, 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978), the Supreme Court had to resolve the question of whether state survivorship law was inconsistent with federal law raised under § 1988. The Court determined that state law was not inconsistent, and prohibited the cause of action. However, the facts of *Robertson* are distinguishable and the Court's reasoning in that case leads to the opposite con-

---

**16.** Golden State distinguishes *Rogerson Aircraft Corp. v. Fairchild Industries*, 632 F.Supp. 1494, 1506 (C.D.Cal.1986) (Hauk, J.). Although this Court was sitting in diversity, and thus applied state law, it was a contract case.

clusion in this case. In *Robertson*, state survivorship law caused an abatement of a particular cause of action. The Court noted the goal of § 1983 of compensating those injured by a deprivation of rights. But the plaintiff in that case was merely the executor of the estate; the injured party was deceased. Thus, it was not the injured party who state law failed to compensate, but a third party. Under these circumstances, the Court concluded that state law was not inconsistent with federal law. *Id.* at 592, 98 S.Ct. at 1996.

Certain statements made in *Robertson* lead this Court to conclude that state law is inconsistent with federal law in this case. For example, the Supreme Court stated,

[i]n resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at "the policies expressed in them." Of particular importance is whether application of state law "would be inconsistent with the federal policy underlying the cause of action under consideration." (citations omitted).

*Id.* at 590, 98 S.Ct. at 1995.

As discussed above, analysis of the policies expressed in § 1983 lead this Court to the conclusion that Golden State should be entitled to prejudgment interest to ensure full compensation.

The City further attempts to refute the contention that the application of California law would vitiate the purposes underlying § 1983, by stating that a "state statute cannot be considered inconsistent with federal law merely because the statute causes the plaintiff to lose the litigation." *Robertson*, 436 U.S. at 593, 98 S.Ct. at 1996–97. The City points out that in *Burka v. New York City Transit Authority*, 747 F.Supp. 214, 224 (S.D.N.Y.1990), the court denied prejudgment interest in a § 1983 case. The Court reasoned that "[c]aselaw permits prejudgment interest to be subject to judicial discretion because it is not absolutely necessary for meaningful compensation" and "denial of prejudgment interest ... would not interfere with *Carey v. Pi-*

*phus*'s mandate that plaintiffs receive 'meaningful compensation.' " *Id.* (citations omitted). However, in *Burka* the court exercised its discretion and denied prejudgment interest. This Court has an equal right to exercise its discretion, and in so doing, find that Golden State is entitled to prejudgment interest.

This Court finds that the issue of whether to award prejudgment interest under state law is up to the Court's discretion. Cal.Civil Code § 3288 states that in actions other than contract actions, the decision is up to the jury's discretion. In this case, the parties have stipulated that the issue would be resolved by the Court. Even if not so stipulated, where the judge acts as a fact-finder, the judge decides the issue. *In re Pago Pago Aircrash*, 525 F.Supp. 1007, 1012 n. 2 (C.D.Cal.1981). This Court further holds that if California law prohibited such an award, California law would be inconsistent with the purpose of 42 U.S.C. § 1983, and as such, the Court must disregard it. Section 1983 explicitly states that the Court should look to state law only in so far as it is not inconsistent with federal law.

#### 4. *Balancing of the Equities*

█ The Ninth Circuit has stated that "whether [prejudgment] interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971). In determining whether to award prejudgment interest, "a persuasive consideration is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed." *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1551 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990); *see also Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988).

Golden State argues that prejudgment interest is necessary to compensate it for the loss of the use of the money it otherwise would have had, and that every equitable factor favors awarding it prejudgment interest. First, Golden State recites

all of the intentional wrongful acts done by the City which caused its demise, including the City's refusal to renew its operating franchise, the denial of the rate increase, the denial of the request to lease, and the transferring of Golden State's franchise to L.A. Taxi. Golden State contends that the City, as the wrongdoer, should bear the risk of the fluctuation of the time value of money, not Golden State.

Second, Golden State reiterates that the purpose of § 1983 is to compensate the victim. To fully compensate Golden State, it must be compensated for the time it was without its money.

The City contends that "compensatory principles must be tempered by an assessment of the equities." *Burka,* 747 F.Supp. at 224. The City argues that several factors make the award of prejudgment interest inequitable.

First, the City contends that the purpose of prejudgment interest is to compensate and not to punish. The City argues that increasing Golden State's award from $4.5 million to the $18.9 million requested by Golden State would be a penalty. Since the Court is not awarding Golden State $18.9 million, as detailed below, the point is moot. Furthermore, the Court is well aware of the purposes of § 1983, and any award of prejudgment interest will be made to compensate the plaintiff, not to punish the defendant.

Second, the City contends that Golden State made a bad faith estimate of its damages that precluded settlement, and that under such circumstances courts may deny prejudgment interest. *See Callen v. Oulu O/Y,* 711 F.Supp. 244, 249 (E.D.Pa.1989), *aff'd,* 897 F.2d 520, *cert. denied,* —— U.S. ——, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). Although the Court was not a party to the settlement negotiations, the Court finds that based on the evidence adduced at trial, there is no evidence that Golden State proceeded in bad faith. Although the $4.5 million awarded by the jury was below the $13 million requested by Golden State, it was also well above the $600,000+ estimate suggested by the City.

Third, the City contends that since it did not know its actions were unlawful at the time it acted, nor did the Ninth Circuit, it is inequitable to hold it responsible for the length of the litigation. However, the City's scienter or lack thereof is legally irrelevant for awarding prejudgment interest, since the purpose is to compensate plaintiff, not punish defendant. *See Lodges 743 and 1746 v. United Aircraft Corp.,* 534 F.2d 422, 447 (2d Cir.1975).

Fourth, the City contends that the Court should deny prejudgment interest because the jury likely considered interest as part of its award. *See Landes Const. Co. v. Royal Bank of Canada,* 833 F.2d 1365, 1375 (9th Cir.1987) (denial under such circumstances is appropriate). The City claims that it requested an instruction that the jury should not consider interest, and the Court declined to give such instruction. The Court appropriately declined to give an instruction on interest because the parties stipulated to having the Court decide the issue after the jury's verdict. No mention of interest was made during the jury trial, and the jury had no basis to include any calculation of interest.

Fifth, the City contends that it did not receive a windfall due to the delay since it did not receive any financial benefits. The City claims that since it is a public entity which is required to have a balanced budget, it did not acquire the $4.5 million in 1981, either by taxation or by reducing spending. Therefore, it never received interest nor saved the cost of borrowing the money, as a defendant normally would. Although this argument sounds appealing, since a state may be held liable for prejudgment interest, *see Riles v. Bennett,* 831 F.2d 875, 877 (9th Cir.1987), *cert. denied,* 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988) (state held liable for prejudgment interest to the Department of Education for Title I grant funds wrongfully misspent to fully compensate U.S. for funds wrongfully withheld), there is no reason that a city may not be held liable for prejudgment interest.

Although the Court acknowledges that some of the arguments of both parties

have some merit, the Court finds that based on the aforementioned discussion, the equities favor granting Golden State prejudgment interest. This will best ensure that the purpose of § 1983, to compensate the injured plaintiff, is accomplished.

### B. What Rate is Appropriate?

Various rates have been suggested by the parties.[17] Some have been provided to the Court for the Court's convenience, while others have been suggested as the appropriate rate by either the City or Golden State.

*Treasury Bill Rate:* [18]

The Ninth Circuit has stated that the appropriate rate for prejudgment interest is the Treasury bill ("T-bill") rate "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." *Western Pac. Fisheries,* 730 F.2d at 1288; *Northrop Corp. v. Triad Intern. Marketing, S.A.,* 842 F.2d 1154, 1155 n. 2 (9th Cir.1988). *See also In re Nucorp Energy, Inc.,* 902 F.2d 729, 734 (9th Cir.1990) (applied 52 week Treasury bill rate to prejudgment interest).

Both Golden State and the City admit that in the Ninth Circuit, the rate for prejudgment interest used in many federal question cases is the 52–week T-bill rate, as prescribed by 28 U.S.C. § 1961 which governs post-judgment interest.

The City contends that, if interest is to be awarded, this riskless rate is appropriate since Golden State has not been required, since 1981, as a practical matter, to bear any risk inherent in the taxicab business. Safe investments carry lower rates. Although Golden State may have invested its $4.5 million in 1981 and received a return greater than the T–Bill rate, it also may have lost its investment since it would have incurred greater risk.

Golden State argues that if the Court determines that the T-bill rate is appropriate, the rate used should be the 52–week Treasury bill rate on the date of the alleged wrong. *See Columbia Brick Works, Inc. v. Royal Insurance Co.,* 768 F.2d 1066 (9th Cir.1985) (proper rate is the 52–week rate on the date of delivery, not the average T-bill rate during the period prior to the judgment. *Id.,* 768 F.2d 1071 at n. 2) (Sneed, J.); *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1577–78, 108 L.Ed.2d 842 (1990) ("The language of [28 U.S.C. § 1961] directs that a single applicable rate of interest be applied to the judgment."); 28 U.S.C. § 1961 (selecting the 52–week T-bill rate, at the last auction of those bills before judgment was entered).

Golden State contends that the use of a series of Treasury bill rates for over ten years reflects neither the proper maturity period nor the illiquidity of the jury's award in this case. Golden State further contends that while the Ninth Circuit has used the T-bill rate in most federal cases, in civil rights cases the most pertinent statutory rate is the "adjusted prime rate," discussed below.

*15% Rate Selected By Mr. Findlay, Plaintiff's Expert:*

Golden State contends that "the trial judge [can] find, on substantial evidence, that the equities of the particular case require a different rate [than the T-bill rate]." *Western Pacific Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1289 (9th Cir.1984). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blanton v. Anzalone,* 813 F.2d 1574, 1576 (9th Cir. 1987).

Golden State contends that substantial evidence supports a higher rate here. Golden State argues that the use of a

---

17. These rates include the 10–year Treasury Bond Rate (13.4%), the 10–year Treasury Bond Rate adjusted for illiquidity (15%); the T–Bill Rate, 90 day or 52 week; the Prime Rate, the Adjusted Prime Rate (90% Prime); the IRS Adjusted Rate; the IRS Actual Rate; and the CPI (Consumer Price Index).

18. The Treasury bill rate is the rate at which the government borrows money by daily auctions of Treasury bills. It is risk-free because there is no risk that the government will not pay its debts.

short-term T-bill rate does not approximate the rate one would expect to earn on a long-term ten-year investment, such as the one that the City, in suppositions effect, compelled Golden State to make. In addition, Golden State contends that applying such a low rate encourages delay by defendants, including the City. Golden State points out that the Ninth Circuit has stated that "the Treasury rate is the government's cost of borrowing, which is relatively quite low because to the lender the government's obligation is a short-term, low risk investment." *In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503, 1506 (9th Cir.1987).

Golden State argues that the appropriate rate of interest is 15% compounded annually. In support of this rate, Golden State's expert, M. Chapman Findlay, has prepared an extensive financial analysis. Mr. Findlay derived this rate by first starting with the rate of interest for a 10–year Treasury bond, which was 13.4%. He then added 1.6% to adjust for the lack of liquidity during the ten year time frame, since no interim coupon payments were made to Golden State. He then compounded this 15% annually, to fully compensate Golden State. *See Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d at 437 (7th Cir.) (affirming annual compounding of interest).

The City argues that the 10–year Treasury bond rate suggested by Golden State is inappropriate because it reflects the market's best guess in 1981 as to the average rate of inflation over the next ten years. However, this rate did not accurately reflect the level of inflation in the 1980's. Thus, the City contends that holders of the 10–year bonds received a windfall since inflation was lower than predicted. Obviously, the City does not agree that 1.6% should be added to the Treasury bond rate.

Golden State claims that the City's characterization of the 10–year Treasury bond rate as a "guess," that is "inherently inaccurate" is without substance, since the rate represents that which a prudent investor, who wanted to avoid the risk that interest rates would fluctuate between the purchase and maturity dates, would have received. Mr. Findlay picked this security because he believed that it most closely approximated Golden State's position, a lump sum payment made ten years later.

*Prime Rate:*

Although neither party suggested that this Court apply the prime rate, other circuits have used the prime rate instead of the T-bill rate. *See Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 437 (7th Cir.1989) (prime rate appropriate for prejudgment interest since it is a readily ascertainable figure which provides a reasonable estimate of the interest rate necessary to compensate plaintiffs for the loss of the use of their money and for the risk of default); *Studiengesellschaft Kohle M.B.H. v. Dart Industries, Inc.*, 666 F.Supp. 674, 698–99 (D.Del.1987), *aff'd*, 862 F.2d 1564 (Fed.Cir.1988) (award at prime rate compounded quarterly is not abuse of discretion).

The City contends that the prime rate is inappropriate because it reflects a risk of nonpayment by nongovernmental borrowers. The City argues that, after 1981, Golden State did not take any risk.

*IRS/Adjusted Prime Rate:*[19]

The Ninth Circuit has awarded prejudgment interest at the IRS rate (adjusted prime/90% of prime), compounded quarterly in civil rights cases. *See Priest v. Rotary*, 634 F.Supp. 571, 585 (N.D.Cal.1986) (applying IRS rate to Title VII claim; 90% of average prime for year in which calendar quarter occurs); *E.E.O.C. v. Pacific Press Publishing Ass'n*, 482 F.Supp. 1291, 1316, 1319–20 (N.D.Cal.1979), *aff'd*, 676 F.2d 1272 (9th Cir.1982); *Estate of Reynolds v. Dole*, No. C–84–70120VW (JSB) (N.D.Cal. Aug. 1, 1990) (1990 WL 112283) (applying IRS rate to claim under § 501 of the Rehabilitation Act); *Fadhl v. City of San Francisco*, 553 F.Supp. 38, 45 (N.D.Cal.1982) (applying IRS rate to Title VII claim), *rev'd and remanded for further findings on damage issues*, 741 F.2d 1163, 1166–67 (9th Cir.1984), *damage award aff'd after re-*

---

**19.** This is the rate charged taxpayers by the IRS on underpayment of taxes.

*mand,* 804 F.2d 1097 (9th Cir.1986); *Richardson v. Restaurant Marketing Assoc.,* 527 F.Supp. 690, 698 (N.D.Cal.1981) (using IRS rate; calculated from the end of each calendar quarter, at 90% of the average prime rate for each year).

Golden State argues that these cases, decided under the NLRA and Title VII, are particularly significant because these statutes create the right under which Golden State's cause of action arose. Furthermore, Golden State contends that since the IRS or adjusted prime rate reflects a broad cross-section of the market, it represents a more accurate approximation of actual yields in the market than the T–Bill rate, and would, therefore, better make Golden State whole.

Golden State also notes that the IRS revised the way it calculates interest in 1986.[20] The NLRB adopted this new rate as the appropriate rate for prejudgment interest under the NLRA. *New Horizons for the Retarded, Inc.,* 283 N.L.R.B. 1173, 1173–74 (1987). This approach has been followed recently by the Southern District of New York in a civil rights case. *Danna v. New York Telephone Co.,* 755 F.Supp. 615, 617 n. 3 (S.D.N.Y.1991) (applying IRS underpayment rates through 1990 in Title VII case).

The City contends that the IRS rate reflects the risk of nonpayment by taxpayers. The City again argues that, after 1981, Golden State did not undertake any risk.

*Consumer Price Index:*

The City argues that in lieu of awarding prejudgment interest, the Court should revise the jury's award using inflation adjusted dollars by applying the Consumer Price Index ("CPI"). The City argues that this would best serve the purpose of compensating the Golden State, without punishing the defendant City.

Golden State argues that no case has ever held that the CPI is an appropriate adjustment for prejudgment interest. Moreover, several courts have rejected its use. *See E.E.O.C. v. Pacific Press Publishing Ass'n,* 482 F.Supp. 1291, 1319–20 (N.D.Cal.1979) (rejecting CPI index in favor of IRS "adjusted prime" rate); *see also Richardson v. Restaurant Marketing Assoc.,* 527 F.Supp. 690, 698 (N.D.Cal.1981). In addition, Golden State contends that not even the City's own expert, Professor Cornell, opines that the CPI adjustment would be economically correct; he merely states what it is.

*This Court Finds The 52–Week Treasury Bill, Adjusted Monthly, To Be Appropriate*

■ This Court finds that the appropriate rate at which to award prejudgment interest is the 52–week Treasury bill rate, as circulated to this Court by the Administrative Office, compounded annually, using an annual average (January to December) of the monthly rates. This rate serves to just and equitably compensate Golden State for the loss of income caused by the City's wrongdoing, without unduly punishing the City. As submitted by Golden State at the Court's request, and verified by the City, applying said rate to the jury's verdict of $4.5 million, for the time frame explained below, leads to an award of $6,415,154 in prejudgment interest, for a total award of $10,915,154 (compensatory damages plus prejudgment interest).

The Court finds the 52–week T-bill rate to be appropriate as a starting point for several reasons. First, it is supported by Ninth Circuit case law. *See Western Pacific Fisheries,* 730 F.2d 1280, 1288 (9th Cir.1984) (T-bill rate appropriate for prejudgment interest "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate."). Second, it is the rate used

---

**20.** Through 1986, the IRS rate was based upon the prime rate, as discussed above. However, the Tax Reform Act of 1986 altered the way the IRS calculates interest. Effective January 1, 1987, the IRS rate for the underpayment of tax obligations is the federal short-term interest rate (based upon federal debt instruments bearing a maturity of 3 years or less) plus 3%, as opposed to the prior 90% of prime rate figure. *See* 26 U.S.C. § 6621 (setting forth prime-based interest rate for years through 1986, and as amended, setting federal debt-based rate for subsequent years).

for the calculation of postjudgment interest (28 U.S.C. § 1961).

Third this Court rejects the other alternatives suggested by the parties for the following reasons. Although the 10–year Treasury bond rate is idealistically sound, balancing the equities leads the Court to reject the rate since rates were artificially high in 1981. The use of such a rate would constitute a penalty to the City. In addition, although Golden State could have invested in a 10–year Treasury bond, it is unlikely that it would have. The prime rate and its derivatives reflect risk. Golden State undertook no risk since 1981. The Court finds that use of the CPI is inappropriate, since it has been rejected as a rate for prejudgment interest by all of the other courts which have considered it. *See, e.g., E.E.O.C. v. Pacific Press Publishing Ass'n*, 482 F.Supp. 1291, 1319–20 (N.D.Cal. 1979).

Moreover, this Court finds that granting Golden State prejudgment interest at a constant rate for the entire ten (10) year time period would constitute relief in excess of what is equitable, and would most likely place Golden State in a better position than it would have been in in March 1981, and for the next ten years.

Although under 28 U.S.C. § 1961, the same rate would be applied throughout the applicable time period, this Court only adopts this post-judgment interest rate as a starting point, because it would be inequitable to apply this rate for the entire ten year period. Clearly, in most situations where post-judgment interest is awarded, as well as most situations in which prejudgment interest is awarded, the applicable period is much shorter than ten years.

In addition, the early 1980's marked a period of unusually high interest rates, a situation which has not existed since that time. Surely it would be inequitable to allow Golden State to receive a windfall due to the fortuitous nature of excessively high interest rates at the time of the City's wrongdoing. Although Golden State argues that if it had operated Yellow Cab it might have earned returns of 30% or higher, this Court notes that it also might have

invested the money and lost it. Such risk of loss also applies to all of the interest rates which include a premium for risk.

Therefore, this Court finds on substantial evidence that the equities require that when applying the 52–week Treasury bill rate to calculate the interest due, the rate should be adjusted on a monthly basis, to reflect the then prevailing rate. *See Western Pacific Fisheries*, 730 F.2d at 1288 (sets for standard). In addition, the interest should be compounded annually. *See Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d at 437 (7th Cir.) (affirming annual compounding of interest). To facilitate this calculation, the Court finds that an annual average (January to December) of the monthly Treasury bill rates should be used for each year.

C. What Time Frame Should be Used for the Calculation of Prejudgment Interest?

1. *When Should Prejudgment Interest Start?*

 Golden State argues that interest on its award should accrue from 1981, when the harm occurred. The Ninth Circuit has approved the calculation for prejudgment interest from the date of the alleged wrongful act. *See Columbia Brick Works, Inc. v. Royal Insurance Co.*, 768 F.2d 1066, 1071 (9th Cir.1985) (interest calculated using the T-bill rate on the date of delivery). Golden State contends that this is the appropriate starting point, since the jury's verdict represents the value of Golden State in 1981.

The City argues that if interest is awarded, it should accrue as of April 1, 1986, the date the Supreme Court established the City's liability. The City contends that this is the appropriate starting point since liability in this case turned on a highly unsettled and novel point of law.

Golden State argues that the City's scienter or lack thereof is legally irrelevant for awarding prejudgment interest, since the purpose of such an award is to compensate plaintiff, not punish defendant. *See Lodges 743 and 1746 v. United Aircraft*

**220**

*Corp.*, 534 F.2d 422, 447 (2d Cir.1975) (wrongdoing not a prerequisite for prejudgment interest; the purpose is to compensate). Furthermore, it is debatable whether the City knew that what it was doing was wrong. In any case, the City was on notice of the alleged wrong from the time it was served with the complaint in 1981.

In the alternative, the City argues that interest should not begin to accrue until April, 1983, the date the City's cease and desist order stopped Golden State from operating, since Golden State could have operated prior to this date. This argument previously has been rejected by the Court. Once the City interfered in the labor dispute, the balance of power was altered, and Golden State could not resume normal operations.

This Court finds that the appropriate date to start accruing prejudgment interest is April 1, 1981. Upon the Court's preliminary ruling that interest should start to accrue from the time that the City had notice of its wrong, i.e., the day after it was served with the complaint, the parties stipulated this date to be April 1, 1981.

### 2. *When Should Prejudgment Interest End?*

 Golden State calculated interest until August 15, 1991, the approximate date of the hearing on prejudgment interest, which was August 12, 1991. The City calculated prejudgment interest until June 30, 1991, the approximate date the jury verdict was entered, which was June 24, 1991. This Court holds that prejudgment interest should be calculated until the entry of judgment on the jury verdict, which occurred on June 24, 1991.

### III. CONCLUSION AND ORDER

For the reasons set forth in this Decision, and good cause appearing, it is hereby ordered that an award of damages be entered as follows:

1. That, as set forth in the Judgment On The Verdict entered by the Clerk on June 24, 1991, Plaintiff Golden State Transit Corporation should be awarded compensatory damages in the amount of $4,500,-000.

2. That Plaintiff Golden State Transit Corporation should be awarded prejudgment interest in the amount of $6,415,154.

3. That Plaintiff Golden State Transit Corporation, therefore, should be awarded a combined total sum of $10,915,154, representing both the award of compensatory damages and prejudgment interest.

4. That Plaintiff Golden State Transit Corporation is entitled to and should be awarded reasonable attorneys fees, the exact amount of which shall be determined by the Court upon a noticed hearing, to be held after the motion and opposition have been filed, and thereafter a separate order will be entered.

LET JUDGMENT BE ENTERED ACCORDINGLY.