**WASHINGTON STATE NURSES ASSOCIATION, Plaintiff-Appellee,**

v.

**WASHINGTON STATE HOSPITAL COMMISSION, et al., Defendants-Appellants.**

No. 84–4113, 84–4131.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1985.

Decided Oct. 8, 1985.

Richard H. Robblee, Hafer, Cassidy & Price, Seattle, Wash., for plaintiff-appellee.

Chip Holcomb and Stephen Klasinski, Asst. Attys. Gen., Olympia, Wash., for defendants-appellants.

Before GOODWIN, SCHROEDER, and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge.

This litigation illustrates the continuing tension between the interest of labor in improving wages and the interest of state governments in containing rising hospital rates. The State of Washington has granted the Washington State Hospital Commission the power to determine the maximum rates which each hospital in the state can charge patients. The Washington State Nurses Association, a labor organization representing nurses, filed this action against the Commission for an injunction against certain Commission practices which the Association claimed interfered with its state and federally protected rights to bargain for wage increases.

The district court granted an injunction against the Commission's "involvement" in collective bargaining. The injunction was based on a stipulated record reflecting certain budget review practices of the Commission and certain public pronouncements of its members. We reverse. We conclude

that the budget review practices and public pronouncements, while undoubtedly intended to encourage hospitals and unions to minimize cost increases, could not control the terms of any particular collective bargaining agreement, and did not interfere in any impermissible way with the exercise of collective bargaining rights protected by section 7 of the National Labor Relations Act, 29 U.S.C. § 157. No conflict occurs with federal law which would justify a holding that the state's activities are preempted by federal law within the standards we apply. *See Brown v. Hotel and Restaurant Employees,* — U.S. —, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984); *Hill v. Florida,* 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945); *Golden State Transit v. City of Los Angeles,* 686 F.2d 758 (9th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *Massachusetts Nurses Association v. Dukakis,* 726 F.2d 41 (1st Cir.1984).

The district court concluded that "[t]he Commission has indirectly, but purposely controlled the amount by which salaries for registered nurses represented by the Association could be increased." Although the court's findings did not identify specific practices to which it was referring, the underlying facts are not materially in dispute.[1] The record reflects that the principal objectionable practice is the Commission's use of "guidelines" to measure the reasonableness of wage increases as a component of the overall costs which the Commission permits to be reflected in rates. Pursuant to the authority given the Commission to review a hospital's financial status, the Commission requires hospitals to submit their proposed budgets for review. The Commission then breaks down the information submitted into various categories; one such category is total salary and wages. Under the guidelines, a comparison is made where the overall wage increases amount to more than five percent over the preceding year. In that event, the

hospital's overall costs are compared to increases of hospitals of comparable size in the same geographic area, and if the increase in question exceeds that rate, the Commission requires a justification for the increase. It appears that on several occasions the Commission did not find the justification satisfactory and refused to recognize projected wage increases as part of the hospital's total projected costs to be offset by increased rate revenue.

In assessing the degree to which these practices actually affect collective bargaining negotiations, we believe it is significant that the guidelines measure total salaries and wages as one cost category, without regard to collective bargaining units or even classifications of employees. Neither nurses nor unions receive any special consideration. It is equally significant that even when a wage increase is "disapproved," the Commission cannot prevent the hospital from increasing wages. The Commission's only control is over the revenue which the hospital can receive from rates. So far as the Commission is concerned, the hospitals are free to contract to pay wages at any level so long as they are able to meet their obligations, either by obtaining revenue from sources other than rates, or by reducing costs in other areas.

The Commission's budget guideline practices with respect to wages are mirrored in the public statements made by Commission members, which the district court also found objectionable. For example, the Commission's Chairman stated: "During the current period of economic recession and high unemployment the Commission must promote budget constraints, cost awareness, prudent buying practices, conservationism in granting salary and wage adjustment and postponement or scaling down of capital expenditures."

The court's findings in relevant part were that:

---

1. To the extent that the district court's characterization of the Commission's conduct as purposeful control over collective bargaining negotiations may be deemed a finding of fact, it is not supported by the stipulated record and is clearly erroneous. *See Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

By statements at public hearings, the Commission used its position to influence hospitals to negotiate wage settlements with little or no wage increase. Commission members repeatedly told hospital officials that wage increases exceeding 5% would have to be "justified." Commission members on at least two occasions, without dissent or disclaimers, have cautioned hospitals against setting higher than desired wage increases with the Association and have urged hospital negotiators to emphasize the Commission's salary and wage policies in upcoming negotiations with the Association.

In assessing the affect of these oral statements on bargaining, as in evaluating the Commission's practices with respect to the guidelines, it is significant that the Commission's legal authority is limited to setting rates. It can neither actually limit overall costs nor impose wage ceilings. Given the fact that wages comprise sixty percent of hospitals' costs, any statements by public officials charged with responsibility for trying to reduce costs inevitably would have to encompass wages. It does not appear, however, that the Commission regularly singled out particular collective bargaining negotiations for comment. The statements that were made cannot be viewed as any more controlling over the bargaining process than the guideline practices.

The issue we must decide is whether the Commission's practices and statements on wage increases acted as a restraint on the exercise of collective bargaining rights protected by federal law. The two leading circuit court decisions dealing with state efforts to deal with rising costs and rates in certain industries are *Massachusetts Nurses Association v. Dukakis*, 726 F.2d 41 (1st Cir.1984), and *Amalgamated Transit Union, Division 819 v. Byrne*, 568 F.2d 1025 (3d Cir.1977) (en banc). In *Dukakis*, the First Circuit held that a state statute aimed at restraining increases in hospital costs did not impermissibly interfere with collective bargaining rights of the nurses union. The court concluded, in a careful opinion, that federal labor policy does not preempt a state statute which regulates hospital costs by imposing an overall limit on what hospitals can collect for patient care.

The aim of the Washington statute is similar to that of the Massachusetts law considered in *Dukakis*. It authorizes the Commission to set the "types and classes of charges" for hospitals and to review hospitals' financial records in order to establish the maximum rates each hospital can charge patients. *See* Wash.Rev.Code §§ 70.39.150, 70.39.160. We agree with the First Circuit in *Dukakis*, that a statute authorizing the control of rates which "is oriented toward neither labor-management issues in general nor wages in particular," 726 F.2d at 44, does not impermissibly interfere with collective bargaining.

The plaintiff in this case does not claim that the state statute itself conflicts with federal labor policy. It argues that the budget review practices and public statements of the Commission constitute such an interference with bargaining that they conflict with federal labor law. The most instructive and influential opinions on related, but, as we shall see, more difficult issues, are those of the Third Circuit, sitting en banc, in *Byrne*. There, the governor of New Jersey threatened to take away state subsidies of private transportation companies in the event that the employers and the unions agreed to a proposed uncapped cost of living adjustment clause in pending negotiations. 568 F.2d at 1026–27. A majority of the Third Circuit held that even such a direct threat did not impermissibly interfere with the collective bargaining process. The minority, in strong dissents, would have held that the threat was an impermissible interference in the negotiations. Judge Aldisert's dissent made a distinction, which the court in *Dukakis* quoted with at least some approval, and which describes a key distinction between this case and *Byrne*. That is the distinction between a threat of withdrawing a subsidy and a communication to all negotiating parties of the overall level of financing which the state will permit:

[T]here exists a critical difference between a state communicating to all affected parties the extent of finances it intends to grant for carriers' operations and a state communicating that it will not continue its subsidization if the carriers agree with the unions to retain uncapped cost of living clauses in their employment contracts. The former communication presumably does not constitute interference with negotiations over wages and working conditions, as it is not a state attempt "to influence the substantive terms of collective bargaining agreements."

*Byrne*, 568 F.2d at 1035 (Aldisert, J., dissenting); *quoted in Dukakis*, 726 F.2d at 44.

We conclude that the practices and statements upon which the district court's injunction was based fall short of the kind of control over collective bargaining which might impermissibly interfere with the exercise of rights under section 7. Under the standards that have developed in this area, it is clear that state efforts to cap cost increases by limiting the hospitals' revenue is a proper province of state regulation. *Dukakis*, 726 F.2d 41; *Byrne*, 568 F.2d 1025. The Washington State Hospital Commission's wage guidelines give the hospitals no less flexibility in managing their overall costs than they would have if the Commission simply imposed a percentage cap on rate increases. Indeed, given the possibility for overriding the guidelines by justifying increases which exceed them, the hospitals may have even greater flexibility under the present system than they would have in the event of a revenue cap.

The efforts of the Commission, both in its use of guidelines and in its urgings to reduce hospital costs, do not impose sanctions on either the union or the employer with respect to collective bargaining negotiations. *Cf. Brown*, — U.S. at —, 104 S.Ct. at 3192, 82 L.Ed.2d at 392 (White, J., dissenting); *Hill v. Florida*, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945). This case is far removed from *Local 24, International Brotherhood of Teamsters v. Oli-*

*ver*, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959), where a state enacted an antitrust law that struck down a provision governing pay for truck owners who drove their own rigs. The Court held that such invalidation of a specific term had an impermissible impact upon the actual terms of bargaining, an area expressly left unregulated by Congress. *Id.* at 296, 79 S.Ct. at 305, 3 L.Ed.2d at 322. Here, the Commission has not invalidated an actual negotiated scale, but has simply set guidelines for total wage costs. Wage increases greater than the guidelines are not unlawful.

The conduct of the Commission may have an indirect influence on bargaining. We observed in *Golden State Transit Corp. v. City of Los Angeles*, 754 F.2d 830 (9th Cir.), *cert. granted*, — U.S. —, 105 S.Ct. 3475, 87 L.Ed.2d 611 (1985), that "[i]n any regulated industry, a myriad of governmental decisions from rate-setting to establishment of safety standards are bound to affect labor relations in that industry." *Id.* at 833. The government actions in this case had far less actual effect on any particular negotiations than the government decision in that case to withhold a franchise to do business until a specific labor dispute was resolved. The record before us shows that the Commission's policies and statements were aimed principally at encouraging the reduction of overall wages as well as other costs. We hold that they did not prevent or significantly inhibit the exercise of collective bargaining rights protected by the NLRA.

For similar reasons, we must reject the argument that there was a conflict between the Commission's conduct and State laws guaranteeing collective bargaining rights similar to those guaranteed by federal law. *See Allen v. Seattle Police Officers Guild*, 100 Wash.2d 361, 670 P.2d 246, 252 (1983).

The judgment of the district court is REVERSED.