**ALAMEDA NEWSPAPERS, INC., Plaintiff,**

v.

**CITY OF OAKLAND, et al., Defendants.**

**No. C–93–3500–CAL.**

United States District Court, N.D. California.

April 29, 1994.

As Amended July 27, 1994.

Paul H. Duvall, King & Ballow, San Diego, CA, for plaintiff.

Marsha S. Berzon, Altshuler Berzon Nussbaum, Berzon & Rubin, San Francisco, CA, Diane J. Simon, Marcia L. Meyers, Oakland City Atty's Office, Oakland, CA, for defendants.

### AMENDED OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

LEGGE, District Judge.

This is an action seeking to invalidate a resolution of the Oakland City Council on the alleged grounds of preemption by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (NLRA), and violations of the United States Constitution.

### I.

The parties have made cross-motions for summary judgment. The motions were opposed, argued and submitted for decision. The court has also received an *amicus curiae* brief from the Northern California Newspaper Guild, Local 52, submitted in support of defendants' position. The court has read the moving and opposing papers, the record of the case, and the relevant authorities.

The court finds, and the parties' briefs agree, that there are no genuine issues of material fact on the issues raised in these

cross-motions. The court concludes that summary judgment on the ground of NLRA preemption must be granted in favor of plaintiff for the reasons discussed below. Because the decision on preemption is dispositive, the court need not reach plaintiff's constitutional allegations.

## II.

Plaintiff Alameda Newspapers Inc. is a corporation which publishes the *Oakland Tribune,* a general circulation daily newspaper. Defendants are the City of Oakland, the Oakland City Council, the mayor, the vice mayor, and six members of the Oakland City Council.

Plaintiff has been involved in labor disputes with unions which represent some of the *Oakland Tribune* 's employees. In July 1993, the Alameda County Central Labor Council, AFL–CIO, began a boycott of plaintiff's newspapers, including the *Oakland Tribune.* The boycott asked subscribers to cancel their subscriptions to, and for businesses not to advertise in, plaintiff's newspapers.

On September 14, 1993 the Oakland City Council adopted the resolution which is at issue in this case, No. 70367 C.M.S.:

A RESOLUTION ENDORSING THE BOYCOTT OF THE OAKLAND TRIBUNE AND OTHER ALAMEDA NEWSPAPER GROUP PUBLICATIONS UNTIL THE CURRENT LABOR DISPUTE IS RESOLVED

WHEREAS, last fall, Texas-based Garden State Newspapers, Inc., publisher of Alameda Newspaper Group publications, purchased the Oakland Tribune, ending a century-long tradition of hometown ownership of the Tribune, and

WHEREAS, the City of Oakland has in the past designated the Oakland Tribune as the newspaper of record for the City of Oakland's official notices; and

WHEREAS, the Oakland Tribune is no longer printed and published in the City of Oakland as is required by City Charter of the City's newspaper of record; and

WHEREAS, no other newspaper meets the City Charter's requirements for the City's newspaper of record; and

WHEREAS, the new owners of the Oakland Tribune have embarked on a course of anti-labor conduct, including:

Eliminating some 500 Oakland jobs at the time of purchase of the Tribune, and eliminating some 130 jobs at the time of the initial purchase of ANG;

Refusing to recognize the jurisdiction of Teamster Mailers Local 15 and Drivers Local 296;

Refusing after six years at the bargaining table to settle a first contract with Northern California Newspaper Guild Local 52 for editorial employees at five ANG publications;

Offering at the bargaining table less than one-half the journeyman pay rate for experienced editorial employees; refusing to guarantee health and welfare coverage to these employees, and refusing to agree to union security provisions that are standard in California private sector contracts; and

Issuing a falsified government document after Cal/OSHA investigated the high incidence of job injury complaints in ANG newsrooms; and

WHEREAS, the Central Labor Council of Alameda County, AFL–CIO has initiated a boycott of the Oakland Tribune and other Alameda Newspaper Group publications; now, therefore, be it

RESOLVED: That the City of Oakland open up the process to select the official newspaper of the City; and, be it

FURTHER RESOLVED: That the Oakland City Council endorse the boycott of the Oakland Tribune and other Alameda Newspaper Group publications; and, be it

FURTHER RESOLVED: That the City Council urges all citizens of Oakland to stop purchasing and advertising in the Oakland Tribune and Alameda Newspaper Group publications until the labor dispute is successfully concluded.

Following the adoption of that resolution, the city council passed a voice resolution directing the city to cancel all legal advertis-

ing in the *Oakland Tribune,* and to cancel all subscriptions to the *Oakland Tribune* that the council could direct be cancelled. On September 16, 1993 the city began cancelling its subscriptions to the *Oakland Tribune* and notified plaintiff that it would discontinue its future advertising in the newspaper.

Plaintiff then brought this action, claiming that the resolution is regulatory in nature and is preempted by the NLRA. In the alternative, plaintiff claims that the resolution deprives it of its rights, privileges, and immunities secured by the First and Fourteenth Amendments of the U.S. Constitution. Defendants contend that the resolution is purely proprietary in nature, and is neither preempted by the NLRA nor a deprivation of constitutional rights.

### III.

The central issue in these cross-motions is whether the NLRA preempts the city council's resolution. Two principles require the superiority of federal law over local regulations in the area of labor relations. They are so-called *Garmon* preemption and *Machinists* preemption.

■ Under *Garmon* preemption, local laws which regulate activities that are either protected by Section 7, or prohibited by Section 8, of the NLRA are preempted. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959); *see also Wisconsin Dept. of Industry v. Gould, Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 1060–61, 89 L.Ed.2d 223 (1986) (*Garmon* preemption prohibits local governments from regulating "activity that the NLRA protects, prohibits, or arguably protects or prohibits"). *Garmon* preemption is intended to avoid conflicts between local regulations and the federal system of labor law that was enacted by Congress in the NLRA. 359 U.S. at 246, 79 S.Ct. at 780.

■ Under *Machinists* preemption, local governments are prevented from regulating those aspects of labor-management relations which Congress intended "to be controlled by the free play of economic forces." *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976) (quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971)). According to *Machinists,* when Congress implemented the regulatory scheme embodied in the NLRA, one purpose was to balance the power between labor and management and allow the parties to use certain economic weapons without restriction. *Id.* at 146–47, 92 S.Ct. at 378–79.

■ The U.S. Supreme Court has decided several additional cases applying these principles of preemption to local regulations of labor disputes.

In *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986), a taxicab company was involved in a labor dispute while its application for the renewal of its city franchise was pending. The Los Angeles City Council refused to renew the franchise unless the labor dispute was resolved. The U.S. Supreme Court, applying the *Machinists* principle, held that the city was preempted from conditioning the franchise renewal on the settlement of the labor dispute, because such a condition restricted the employer's ability to use its economic weapons to resist a strike. *Id.* at 618, 106 S.Ct. at 1400–01.

However, in a later decision the Supreme Court held that the NLRA does not preempt a municipality from enacting labor relations regulations if it does so for purely proprietary reasons. *Building & Construction Trades Council v. Associated Builders & Contractors,* —— U.S. ——, ——–——, 113 S.Ct. 1190, 1196–99, 122 L.Ed.2d 565 (1993). The Court explained:

> When we say that the NLRA preempts state law, we mean that the NLRA prevents a State from regulating within a protected zone, whether it be a zone protected and reserved for market freedom, see *Machinists,* or for NLRB jurisdiction, see *Garmon.* A State does not regulate, however, simply by acting within one of these protected areas. When a State owns and manages property, for example, it must interact with private participants in the marketplace. In so doing, the State is not subject to preemption by the NLRA,

because preemption doctrines apply only to state *regulation*.

*Id.* at ——, 113 S.Ct. at 1196.

In *Building & Trades Council*, the local agency provided water and sanitary services, and was the proprietor of the project facilities. The agency required all bidders on its project to be bound by the terms of a prehire agreement with a labor union. An association of nonunion construction workers argued that the agency's action was preempted under both *Garmon* and *Machinists*. The Supreme Court held that the challenged requirement was not preempted, because the agency's interest in the project was proprietary rather than regulatory. "In the absence of any express or implied indication by Congress that a State may not manage its own property when it pursues its *purely proprietary interests*, and where analogous private conduct would be permitted, this Court will not infer such a restriction." —— U.S. at ——, 113 S.Ct. at 1198 (emphasis added).

According to the above decisions of the U.S. Supreme Court, this court must examine the totality of the circumstances and decide whether the city is here acting as a regulator or as a proprietor. *See Wisconsin Dept. of Industry v. Gould Inc.,* 475 U.S. at 289, 106 S.Ct. at 1062–63, 89 L.Ed.2d at —— (1986). The Supreme Court there held that the NLRA preempted a state statute regarding not doing business with persons who had violated the NLRA. That statute was preempted even though it was an exercise of the state's spending power. Because "it is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of [the inquiry]," the Court held that the statute's purpose was regulatory, namely, to deter labor law violations. *Id.*

The first question here is therefore whether the resolution of the City of Oakland is regulatory or proprietary.

### IV.

Before the city's conduct can be preempted, it must be "regulation." As the Supreme Court said in *Building & Trades Council,* "States have a qualitatively different role to play from private parties ... When the State acts as a regulator, it performs a role that is characteristically a governmental rather than a private role, *boycotts notwithstanding.* Moreover, as regulator of private conduct, the State is more powerful than private parties. These distinctions are far less significant when the State acts as a market participant with *no* interest in setting policy." —— U.S. at ——, 113 S.Ct. at 1197. (emphasis added).

Plaintiff argues that the city's use of its powers here is to regulate the outcome of the *Oakland Tribune*'s labor dispute, and the resolution is therefore not proprietary. It argues that the "apparent purpose of Resolution 70367 C.M.S. is to influence the collective bargaining and compel an agreement, rather than to control the City's spending." Plaintiff distinguishes *Building & Trades Council* on the grounds that in that case the agency was an employer and a party to the collective bargaining agreement, and as such it had a proprietary interest in the agreement's terms. The court believes that plaintiff is correct. Here the city is not an employer, is not a party to a collective bargaining agreement, has no proprietary interest in the terms of the agreement between plaintiff and the unions, and is therefore not acting in a proprietary role as defined by the Supreme Court in *Building & Trades Council.*

Defendants argue that the city is merely acting as a consumer; and that as a consumer it is entitled to choose its suppliers of advertising services and newspapers for any reason, including participation in a consumer boycott. Defendants attempt to apply *Building & Trades* here, by arguing that the only labor considerations that the city took into account were those under which the newspapers and advertising purchased by the city are produced; and therefore continued advertising in the *Oakland Tribune,* where advertising copy is set and printed under disputed labor conditions, would arguably constitute exploitation by the city of those labor conditions. This argument, however, is unconvincing since advertising copy is composed and set by members of the Bay Area Typographical Union, a union which has ex-

pressly decided not to participate in the AFL–CIO boycott.

According to *Gould,* application of preemption principles depends on whether the city's purpose in adopting the resolution was regulatory or proprietary. *See Assoc. Builders v. City of Seward,* 966 F.2d 492, 495 (9th Cir. 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1577, 123 L.Ed.2d 146 (1993). This court concludes from the record, primarily from the language of the resolution, that the City of Oakland is acting here as a regulator and not as a proprietor.

Plaintiff's conduct that is condemned by the resolution has been explicitly labelled "anti-labor conduct" by defendants. The city's decision to endorse, participate in, and urge support for the boycott is expressly based on several specific categories of plaintiff's allegedly "anti-labor conduct." The city's primary purpose in adopting the resolution was to condemn plaintiff's conduct in its dealings with the unions, and to use the city's economic and public influence to force plaintiff to agree to union demands. Where, as here, labor policy considerations are the thrust of the city's action, the city is functioning as a regulator.

The city's argument that it was acting as an ordinary consumer in deciding to purchase from, and advertise in, different newspapers is inconsistent with the language of the resolution. If as a result of plaintiff's labor disputes the city were not receiving its newspaper deliveries on schedule, or if the labor dispute had caused the city's advertisements to run incorrectly or receive low circulation, then the city's motivation for the resolution might be proprietary. But that is not what it says. The city is clearly pursuing a policy goal, not a purchaser's goal: boycotting the *Oakland Tribune* in no way helps the city. It only helps the unions at the bargaining table. Indeed, the city is hurt by its own action. It must now find new advertising media and sources for news information, which is especially difficult since Oakland only has one paper of general circulation.

Nor does the resolution refer to any proprietary interests of the city. Instead, the resolution expressly recites plaintiff's alleg-

edly "anti-labor conduct," which conduct was unrelated to plaintiff's ability to deliver the *Oakland Tribune* dependably to the city or carry its advertisements. As such, the city was performing "a role that is characteristically a governmental rather than a private role." *Building & Trades Council,* — U.S. at ——, 113 S.Ct. at 1197. As the Supreme Court stated in *Building & Trades Council,* "[b]ecause the statute at issue in *Gould* addressed employer conduct unrelated to the employer's performance of contractual obligations to the State ... we concluded: [the State] 'simply is not functioning as a private purchaser of services' [but rather is attempting to regulate labor relations]." *Id.* In adopting the resolution, the city acted as a regulator and not a proprietor within the meaning of *Building & Trades Council.*

## V..

Having concluded that the resolution is regulatory, this court then turns to the question of the preemptive effect of *Garmon* and *Machinists* on the resolution.

Plaintiff argues that the resolution regulates conduct that is within the exclusive jurisdiction of the National Labor Relations Board; that is, *Garmon* preemption. The specific "anti-labor conduct" which the city recites in its resolution, plaintiff argues, is "prohibited by Section 8(a)(5) of the NLRA, or conversely, is lawful bargaining activity protected by Section 8(d) of the NLRA. In either case, [plaintiff's] conduct, legal or not, is subject to the sole determination by the NLRB."

Plaintiff also argues that by adopting the resolution, the city has improperly added its own remedy to those defined by Congress in the NLRA. The Supreme Court said in *Gould* that there is an inherent potential for conflict between local and federal law when separate remedies are brought to bear on the same activity. Plaintiff argues that in its attempt to compel agreement between plaintiff and the unions, the city has "entered an area even the NLRB, as the entity vested with the authority to regulate collective bargaining under the NLRA, cannot touch." *See East Bay Chevrolet v. NLRB,* 659 F.2d

1006 (9th Cir.1981) (the NLRB cannot influence the outcome of negotiations).

The city argues that its use of the term "anti-labor" in the resolution means only that plaintiff's conduct is "opposed by and harms labor interests and policies," and that the resolution does not claim that such conduct violates the NLRA. Accordingly, defendants argue that the resolution is not an invasion into an area reserved for NLRB jurisdiction. Defendants do not offer, and the court has not found, any support for this narrow definition of *Garmon.* *Garmon* preemption could well apply to a local regulation which finds that a business has engaged in "anti-labor" conduct and then enacts its own penalties for that conduct. The result of the resolution here is that the city effectively charged plaintiff with unfair labor conduct and then enacted its own remedies.

However, this court need not go so far as to find preemption under *Garmon,* because of the clear application of *Machinists* preemption. The city's resolution attempts to coerce plaintiff through economic and public pressure, and that is legislative activity that is preempted by *Machinists.* By cancelling their subscriptions and advertisements, and by encouraging the citizens of Oakland to do the same, the city has changed the economic balance of the parties to the labor dispute, and has thereby restricted plaintiff's use of its economic rights *vis a vis* the unions. The city has put its thumb on the balance scale between management and labor in a private industry, which a local government may not do.

Defendants also argue that anti-labor statements in the resolution are "hortatory" statements in which the city expresses its support for the boycott and urges Oakland citizens to participate, and are therefore "obviously" not regulatory. However, that distinction lacks any support in statutory or case law. *Cf. Washington State Nurse's Assoc. v. Washington State Hospital Comm.,* 773 F.2d 1044 (9th Cir.1985); *Southwestern Bell v. Arkansas Public Service Comm.,* 824 F.2d 672 (8th Cir.1987). And it is contradicted by the language of the resolution and the related voice resolution, which endorsed and adopted specific actions against plaintiff.

The resolution is an attempt by the city to interfere in the "free play of economic forces" permitted by the NLRA in collective bargaining disputes. The resolution, in accordance with *Machinists,* is preempted by the NLRA and is therefore invalid.

### VI.

Defendants further argue that even if the resolution is preempted, the Norris–LaGuardia Act, 29 U.S.C. § 104, bars an injunction because it "involv[es] or grow[s] out of a labor dispute." See *Reuter v. Skipper,* 4 F.3d 716 (9th Cir.1993). Defendants rely on section 4 of the Norris–LaGuardia Act which provides that:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons *participating or interested in* such dispute from doing [among other acts]:

(c) ....withholding from, any person participating or interested in such labor dispute, any ... moneys or things of value; and

(e) [g]iving publicity to the existence of, or the facts involved in, any labor dispute ... by any ... method not involving fraud or violence.

29 U.S.C. § 104. (emphasis added).

However, the city is not a "person participating or interested in a labor dispute," as those terms are defined in 29 U.S.C. § 113. Section 113(a)'s definition of a "labor dispute" does not encompass this situation unless the city has an "interest therein." And Section 113(b) limits those who are "interested" parties:

A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest [in the same industry, trade, craft, or occupation in which such dispute occurs], or is a member, officer, or agent of any association composed in whole or in part of employers or employees en-

gaged in such industry, trade, craft, or occupation.

29 U.S.C. § 113(b).

While the city may meet the first prong of that definition, it does not meet any of the three branches of the second prong. It would require an extension of "direct or indirect interest" beyond the statutory limits for this court to find that the city council has a discernable § 113 interest in an internal labor dispute between an employer and unions within a private industry.

On remand from the U.S. Supreme Court, the federal district court in *Golden State Transit* held that injunctive relief was the appropriate remedy where the city's conduct was preempted by the NLRA. *Golden State Transit Corp. v. City of Los Angeles,* 660 F.Supp. 571, 575 (C.D.Cal.1987) (reversed on other grounds, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). The court noted that while "... injunctive relief of the type sought [in that case] is an extraordinary remedy that should be granted only under compelling circumstances and in a limited manner to restore the status quo," it is the appropriate remedy where city action is preempted by the NLRA. *Id.* at 575. This court agrees.

As the Ninth Circuit has stated, where as here plaintiff is successful on the merits, it need not make a showing of the amount of irreparable injury it has suffered; "the inquiry is over and [plaintiff] is entitled to relief as a matter of law." *Multnomah Legal Serv. Wkrs. U. v. Legal Serv. Corp.,* 936 F.2d 1547, 1553 (9th Cir.1991) (quoting *Sierra Club v. Penfold,* 857 F.2d 1307, 1318 n. 16 (9th Cir. 1988)).

### VII.

In a separate brief, defendant City Councilman de la Fuente argues that an injunction against him and the other individual council members, acting in their individual capacities, would violate their First Amendment rights. Defendant cites *Bond v. Floyd,* 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966), where the U.S. Supreme Court stated that "[t]he manifest function of the First Amendment in a representative government re-quires that legislators be given the widest latitude to express their views on issues of policy.... [l]egislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them ...." *Id.* at 135–136, 87 S.Ct. at 349.

Mr. de la Fuente is correct that the language of the injunction sought by plaintiff would improperly enjoin the individual defendants, acting in their individual capacities, from exercising their First Amendment rights. The individual defendants' expression of their personal views, outside of their capacity in voting as members of the city council, is not regulatory and is not preempted by the NLRA. This court will not enjoin their constitutionally protected right of expression.

### VIII.

It is therefore ordered that:

(1) Plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied.

(2) Oakland City Council Resolution 70367 C.M.S. is declared to be preempted by the NLRA, and therefore invalid and unenforceable.

(3) Defendants, their officers, agents, servants, employees, attorneys, and all other persons in active participation with them, are permanently enjoined from:

(a) enforcing or implementing Resolution 70367 C.M.S.;

(b) endorsing the boycott against plaintiff by the Central Labor Council of Alameda County, AFL–CIO;

(c) requesting any citizen of Oakland to stop purchasing or advertising in the *Oakland Tribune* or any of plaintiff's other publications;

(d) replacing the *Oakland Tribune* as the newspaper of record for the City of Oakland's official notices because of any labor dispute subject to the NLRA and involving Alameda Newspapers, Inc.;

(e) cancelling any subscriptions to the *Oakland Tribune* because of any labor dis-

pute subject to the NLRA and involving Alameda Newspapers, Inc.;

(f) purchasing any print media advertising space or subscriptions for the City of Oakland in any publication other than the *Oakland Tribune* because of any labor dispute subject to the NLRA and involving Alameda Newspapers, Inc.; and

(g) entering into any agreement with any advertising medium other than the *Oakland Tribune* committing the City of Oakland to the purchase of advertising space, time, or subscriptions because of any labor dispute subject to the NLRA and involving Alameda Newspapers, Inc.

This paragraph (3), however, shall not enjoin any of the above actions by the mayor, vice mayor or members of the city council while acting solely in their individual capacities.

(4) Defendants are further ordered to reinstate any subscriptions to the *Oakland Tribune* that they directed, on behalf of the City of Oakland, to be cancelled because of the labor dispute in this case.

## IX.

The cross motions for summary judgment and this order did not address any issues regarding damages. However, plaintiff has subsequently dismissed its claim for damages requested in the complaint.